## Commonwealth vs. Calvin Hebert.

Berkshire.  December 4, 1979. — February 5, 1980.

Present: Hennessey, C.J., Quirico, Wilkins, Liacos, & Abrams, JJ.

*Jury and Jurors.  Practice, Criminal,* Mistrial, Verdict, Examination of jurors.

Where a poll of the jury in a criminal case showed that one juror felt in good conscience that she could not find the defendant guilty and where the judge subsequently engaged in an improper dialogue with the juror, a mistrial should have been declared. [754]

Complaint received and sworn to in the District Court of Northern Berkshire on April 2, 1975.

Upon appeal to the Superior Court and transfer to the District Court of Central Berkshire, the case was tried before *Ferris, J.*

*Daniel E. Callahan* for the defendant.

*John A. Agostini,* Assistant District Attorney (*Daniel A. Ford,* Assistant District Attorney, with him) for the Commonwealth.

Wilkins, J.  In this case we conclude that a poll of the jury showed that the jurors did not agree unanimously on a verdict of the defendant's guilt and that, following a dialogue between the judge and an unconvinced juror, a mistrial should have been declared.

We summarize the evidence briefly.  On April 1, 1975, the first day of the effectiveness of the mandatory one-year sentence for the carrying of a firearm without a firearm identification card,[1] a policeman apprehended the defend-

---

[1] See G. L. c. 269, § 10, as amended by St. 1974, c. 649, § 2, made effective January 1, 1975, by St. 1974, c. 649, § 3, but suspended until April 1, 1975, by St. 1975, c. 4, § 1.

ant who was carrying an unloaded, but operational, rifle on a dirt road leading into woods in a rural area of the city of North Adams. The rifle belonged to the defendant's father. The defendant, who lived with his parents, was using the rifle with his father's permission. The defendant did not know what a firearms identification card was, and he did not have one. His father had the necessary permit, but he had not informed his son of the need to obtain a firearms identification card.

The case was tried before a judge and a jury of six in the District Court of Central Berkshire. After the jury had deliberated for approximately forty minutes, the jury sent a statement to the judge: "One juror out of their [*sic*] own conscience cannot give a verdict of guilty, knowing the defendant to be in possession of the firearm without an F.I.D. card based on the premise that the defendant might not have known the date to be April 1st." The judge told the jury that the defendant's lack of knowledge that the effective date of the gun control law was April 1 was of no consequence. The defendant requested a mistrial and argued that the judge's further instructions were coercive. The judge denied the motion. The jurors resumed deliberation.

About twenty minutes later, the jury sent another message to the judge which read: "One juror wants to be disqualified because of the date involved. The boy should not be put in jail or have such on his record. It is a matter of conscience." The judge told the jury that the matter of sentencing was not the jury's responsibility. He gave a further charge derived from the modified *Tuey*[2] charge approved in *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 98-101 (1973).[3] The defendant again moved for a mistrial asserting that the nature of the charge was coercive and that the judge had exceeded his authority. The jury once again retired to deliberate.

---

[2] *Commonwealth* v. *Tuey,* 8 Cush. 1, 2-3 (1851).

[3] Because of the result we reach, we do not pass on the defendant's argument that the charge should not have been given and that it seriously failed to adhere to approved standards for such a charge.

Ten minutes later the jury returned to announce a verdict of guilty. The judge authorized a polling of the jury. One juror answered that her verdict was qualified, because she felt in good conscience that if the defendant did not know he needed a firearms identification card on April 1, 1975, she could not find him guilty. The judge then engaged in a three minute dialogue with the juror. He explained that, in his opinion, the evidence was clear that the defendant had possession of a rifle on April 1, 1975, and did not have a firearms identification card. The juror said she was concerned about the fortuitous nature of the incident because on the preceding day the defendant's failure to have a firearms identification card would not have been a crime. In response to questioning by the judge, she admitted that she was satisfied beyond a reasonable doubt that the defendant had a rifle on April 1, 1975, and that he did not have an identification card. The judge commented that he could see no problem with the case. The juror again expressed her concern with the defendant's lack of knowledge of the effective date of the statute. The judge disregarded the juror's comments and excused the jury.

The defendant objected to the judge's dialogue and renewed his motion for a mistrial. He argued that it was improper to review the evidence in a conversation with a juror and that if a juror's verdict is qualified, the judge must either direct the jury to deliberate further or discharge the jury.

A guilty verdict was entered, and the defendant was sentenced to a mandatory one-year term in the Berkshire County house of correction. The trial judge stayed execution of the sentence pending this court's decision on the defendant's bill of exceptions.

It is beyond dispute that the jury verdict in a criminal trial in this Commonwealth must be unanimous. See *Brunson* v. *Commonwealth*, 369 Mass. 106, 120 (1975). Although the decision to poll a jury is discretionary with the trial judge (*Commonwealth* v. *Valliere*, 366 Mass. 479, 497 [1974]; *Commonwealth* v. *Caine*, 366 Mass. 366, 375

[1974]), once the decision to poll is made, it must appear that the verdict is unanimous. A judge has no authority to direct a verdict when there are issues of fact to be resolved. See *Commonwealth* v. *Moniz,* 336 Mass. 178, 180 (1957). He may, however, question a juror in a limited way in order to understand whether a juror's answers show that the juror agrees with the verdict as announced. See *Commonwealth* v. *Fleming,* 360 Mass. 404, 408 (1971); *Commonwealth* v. *Rego,* 360 Mass. 385, 393 (1971). In general, however, our law does not permit inquiry into "the subjective mental processes of jurors, such as the reasons for their decisions." *Commonwealth* v. *Fidler,* 377 Mass. 192, 198 (1979). Moreover, any questioning of a juror must be neutral and not coercive or otherwise calculated to affect the juror's judgment. *Amos* v. *United States,* 496 F.2d 1269, 1272-1273 (8th Cir.), cert. denied, 419 U.S. 896 (1974). *United States* v. *Sexton,* 456 F.2d 961, 966-967 (5th Cir. 1972). *United States* v. *Brooks,* 420 F.2d 1350, 1354 (D.C. Cir. 1969).

In our view, the judge's comments and questions in this case exceeded proper limits. There is a distinction between judicial action taken to obtain clarity and judicial action that is likely to coerce. *Williams* v. *United States,* 419 F.2d 740, 746 (D.C. Cir. 1969). The judge's statements that, in his view, the evidence was clear and that he could see no problem with the case are themselves improper. See *Commonwealth* v. *Sneed,* 376 Mass. 867, 870 (1978). The inquiry whether the juror agreed that certain facts were proved beyond a reasonable doubt was likely to be coercive because it intruded into the jury's function. See *United States* v. *Spock,* 416 F.2d 165, 182 (1st Cir. 1969). Although it is improper for a juror to disregard the law as given by the judge, it remains within the power of a juror to vote his or her conscience. See *Commonwealth* v. *Dickerson,* 372 Mass. 783, 797 (1977), and *id.* at 811-812 (Quirico, J., concurring); *Commonwealth* v. *Mutina,* 366 Mass. 810, 819-820 (1975); *Horning* v. *District of Columbia,* 254 U.S. 135, 138 (1920) ("[T]he jury has the power to bring in a ver-

dict in the teeth of both the law and facts") (Holmes, J.); *United States* v. *Dougherty,* 473 F.2d 1113, 1132-1133 (D.C. Cir. 1972). See generally, Note, Jury Nullification in Historical Perspective: Massachusetts as a Case Study, 12 Suffolk U. L. Rev. 968 (1978). In this case to the very end, the unconvinced juror felt in good conscience that she could not find the defendant guilty. In such a case, there was no unanimous verdict. The judge properly might have ordered further jury deliberations (prior to the dialogue with the juror) or he might have declared a mistrial. See *Thames* v. *Commonwealth,* 365 Mass. 477, 480 (1974).[4] He did neither, and thus the defendant's motion for a mistrial made after the dialogue with the juror should have been allowed.[5]

*Exceptions sustained.*

---

[4] Rule 27 (d) of the Mass. R. Crim. P., 378 Mass. 897, effective July 1, 1979, and thus not applicable to this case, states in part that "[i]f after the poll there is not a unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

[5] The defendant makes no claim on double jeopardy grounds that it would be impermissible to try him again.