COMMONWEALTH *vs.* SAMUEL J. AUGUSTE.

Suffolk. September 9, 1992. - December 30, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Jury and Jurors. Practice, Criminal,* Challenge to jurors, Presence of police witness at prosecutor's table, Judicial discretion, Trial of indictments together, Severance.

The judge at a criminal trial violated the defendant's fair trial rights in failing to question adequately jurors who had expressed concerns about their impartiality and, where the defendant was forced to exhaust his peremptory challenges excluding jurors who, on meaningful examination, may have been excludable for cause or for bias, this error required reversal of the defendant's convictions without a showing of actual prejudice to him. [52-59]

At a criminal trial, the judge's allowance of the Commonwealth's request to have a police officer witness, who was also the chief investigator in the case, seated at counsel table with the prosecutor was not an error of law. [59-60]

A judge's decision to join for trial an armed robbery charge and murder charge arising out of the events of a certain date with a second armed robbery charge arising out of events occurring a week earlier at the same address was neither an abuse of discretion nor an error of law. [60-61]

INDICTMENTS found and returned in the Superior Court Department on December 8, 1989.

The cases were tried before *John L. Murphy, Jr.,* J.

*Stephen Hrones* (*Murray A. Kohn* with him) for the defendant.

*Roger L. Michel, Jr.,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. On June 12, 1990, a jury convicted the defendant, Samuel J. Auguste, of murder in the first degree and of two separate armed robberies. The defendant appeals his convictions, arguing that at the empanelment the trial judge

failed to question adequately jurors who had expressed concerns about their impartiality. We agree that the judge failed in his duty to question the venire adequately. We reverse. We discuss briefly issues likely to arise at a retrial.

There was ample evidence introduced at trial to justify the defendant's convictions. The defendant does not argue otherwise. On November 26, 1989, Gesner Junior Louisville (Junior) witnessed the murder of Joseph R. Bruno (Bruno), a relative of Junior, at Bruno's home in the Dorchester section of Boston, where Junior had been living for about six months. The assailants, wielding at least one firearm, murdered Bruno during their robbery of Junior.

The day after the murder, Roussel Theodat (Theodat), who played cards at Bruno's house frequently and was a friend of Bruno's, told police that he had been robbed of $1,200 and a gold ring at the same address on November 20, 1989. The defendant was convicted of the armed robberies of Junior and Theodat, and the murder of Bruno.

1. *Jury empanelment.* At the beginning of the jury empanelment phase of the defendant's trial, the judge asked that any jurors who answered affirmatively any of the questions required by G. L. c. 234, § 28 (1990 ed.), to approach the sidebar. The judge also asked that "any members of the panel aware of any reason, whatsoever, why you could not stand indifferent or impartial" make themselves known. A substantial fraction of the full venire indicated that for a variety of reasons they might not be able to judge the evidence impartially. The judge's basis for determining whether a juror was impartial depended on the juror's answer to the following question: "Do you think you could listen to the evidence here, and if you determine that this defendant is not guilty, you will say he is not guilty?" (or a minor variation thereof). See, e.g., Appendix. Defense counsel repeatedly objected to the judge's questioning of the prospective jurors as to their impartiality because the questions suggested the correct answers. Defense counsel requested that further questions be asked of each juror to determine whether there was a basis for either excusing the juror or a challenge for cause.

The judge repeatedly denied defense counsel's requests. The defendant challenged those jurors for cause whom the judge refused to question any further, and whose answers indicated that there might be a reason either to excuse the jurors or challenge the jurors for cause. The defendant exhausted his sixteen peremptory challenges, expending nine of them removing jurors who had expressed concerns as to their impartiality in these sidebar conferences.

General Laws c. 234, § 28 (1990 ed.), requires a judge, on "motion of either party . . . [to] examine on oath a person who is called as a juror therein, to learn whether he . . . has expressed or formed an opinion, or is sensible of any bias or prejudice" toward a defendant or in a case. Section 28 further requires that, if it appears that a juror may not stand indifferent (due to factors extraneous to the case, such as community attitudes or bias for or against certain classes of persons), "the court shall . . . examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may, as aforesaid, cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case."

The defendant contends that the judge allowed a number of persons to be seated as potential jurors even after the jurors expressed grave doubts about their impartiality. In support of his argument, the defendant points to a number of instances when jurors were determined to be indifferent in spite of the jurors' expressed reservations about their impartiality. One example:

THE COURT: "What can I do for you?"
THE JUROR: "I don't really feel I could be impartial 'cause of the race thing."
THE COURT: "Why?"
THE JUROR: "I just have a problem with that. I know I wouldn't be up to really pay attention to the facts, there's no white or whatever."
THE COURT: "What race is he, do you know?"

THE JUROR: "Well, as far as I'm concerned, he is black, but I mean —"

THE COURT: "He is not black, is he?"

[THE PROSECUTOR]: "The victim was black —"

THE COURT: "I don't think he is black, is he."

THE JUROR: "I just wasn't sure."

[DEFENSE COUNSEL]: "I think he is black, Haitian's [*sic*] are black."

THE COURT: "Haitians, are they black? If you listen to all of the evidence and you determine that he is not guilty would you say he is guilty because he is black?"

THE JUROR: "I would try not to, but I just —"

THE COURT: "What do you mean you would do — what kind of work do you do?"

THE JUROR: "Secretary."

THE COURT: "If, in your mind, when the case is all over, in your mind you say he is not guilty, do you think you would say he is guilty because he is black?"

THE JUROR: "I don't know sometime — I'm afraid I would. I know it's not right, but I just —"

THE COURT: "Are you sure you don't just want to get back to work?"

THE JUROR: "No."

THE COURT: "What?"

THE JUROR: "No."

THE COURT: "Well, I'm going to hold you here. Okay."

THE JUROR: "Yes."

THE COURT: "Thank you."

[Defense counsel challenged for cause.]

Another example:

THE JUROR: "Three years ago, two of my — myself and two of my friends were shot at by a black male with a shotgun. My friend received

22 pellets in the face. So, I don't think I can be impartial in this."

THE COURT: "Because your friend got two pellets in the face, come on, come on. What happened to you?"

THE JUROR: "Nothing."

THE COURT: "Anything else?"

THE JUROR: "No, that's it."

THE COURT: "Do you think you can listen to the evidence here and if the defendant is not guilty, you will say he is not guilty?"

THE JUROR: "I don't think so."

THE COURT: "Why, because your friend got two shotgun pellets?"

THE JUROR: "Twenty-two."

THE COURT: "What?"

THE JUROR: "He got 22 in the face."

THE COURT: "How long ago was that?"

THE JUROR: "Three years ago."

THE COURT: "That's going to shake you up for the rest of your life, is it?"

THE JUROR: "Well, I just don't think I could be impartial."

THE COURT: "You what?"

THE JUROR: "I don't think I could be fair to him."

. . .

THE COURT: "And are you saying you are incapable of making a decision based upon the evidence that you hear? Are you going to say, if you determine he is not guilty, are you going to say he is guilty because your friend was shot?"

THE JUROR: "Well, I don't think I could be fair to him."

THE COURT: "What?"

THE JUROR: "I don't think I could be fair to him."

THE COURT: "No, I'm asking you a question. If you listen to the evidence and you determine the

> defendant is not guilty, are you going to say he is guilty because your friend got a pellet in the face?"
>
> THE JUROR: "I don't know what I'm going to do."
>
> THE COURT: "You what?"
>
> THE JUROR: "I don't know."
>
> THE COURT: "Well, you can do the best you can, okay, you may stay with us."

[Challenged for cause by the defense.]

The defendant asserts that the judge's examination of potential jurors violated his right to a fair trial. We agree. The defendant argues that he was forced to exhaust his peremptory challenges on some potential jurors who might have been challenged for cause or excused. Two disputed jurors remained on the panel after the defendant had exhausted his peremptory challenges. See *Commonwealth* v. *Wood,* 389 Mass. 552 (1983) (erroneous denial of the right to exercise a proper peremptory challenge is reversible error without a showing of prejudice).

The Commonwealth relies on our cases which generally uphold a judge's exercise of discretion. "Our general rule has been that '[i]n the absence of action or inaction which constitutes a denial of constitutional rights . . . or which constitutes an error of law, such as an abuse of discretion, we will not interfere with the trial judge in the jury selection process.' " *Commonwealth* v. *Dickerson,* 372 Mass. 783, 794 (1977), quoting *Commonwealth* v. *McKay,* 363 Mass. 220, 223 (1973). See, e.g., *Commonwealth* v. *Ascolillo,* 405 Mass. 456 (1989); *Commonwealth* v. *Lattimore,* 396 Mass. 446 (1985). See also *Commonwealth* v. *Sheline,* 391 Mass. 279, 290-291 (1984) (judge's initial determination of impartiality of proposed jurors "will not be disturbed on appeal . . . [barring] a substantial risk that the case [was] decided in whole or in part on the basis of extraneous issues"). The Commonwealth highlights a number of factors that, it contends, demonstrate the difficult task the judge faced in seating a willing jury, including the high percentage of the total venire

that expressed doubts about their own impartiality, probable juror vacation plans, the subject matter of the trial, and pleasant summer weather on the days of jury empanelment.[1] Although we recognize that many factors may influence a juror's desire not to serve, and agree that a judge has broad discretion in determining impartiality, we disagree with the Commonwealth's assertion that the judge's probing of prospective jurors was sufficient to insure impartial jurors were empanelled.

The problem with the judge's inquiry is that it avoided the very issue which the judge is required to investigate, i.e., whether the juror would be impartial in his or her determination of the evidence.[2] "[I]f there is reason to suspect that a juror or jurors are not or may not be indifferent within the meaning of [G. L. c. 234, § 28], the judge must inquire fully before declaring jurors indifferent and allowing them to be seated." *Commonwealth* v. *Horton*, 376 Mass. 380, 395 (1978), cert. denied sub nom. *Wideman* v. *United States*, 440 U.S. 923 (1979), quoting *Commonwealth* v. *Dickerson*, 372 Mass. 783, 793 (1977). A prospective juror who does not come forward in response to a judge's questioning of the full venire is "[impliedly representing] that he or she is not biased." *Commonwealth* v. *Duddie Ford, Inc.*, 409 Mass. 387, 393 (1991). An affirmative response to the judge's questioning indicates that the judge must probe the juror to determine impartiality. In such circumstances the judge's duty is to conduct a meaningful inquiry into the juror's impartiality in an effort to promote the intelligent exercise of peremptory challenges. See, e.g., *Commonwealth* v. *Fudge*, 20 Mass. App. Ct. 382, 388 (1985). Although the judge may reasona-

---

[1]Because the length of service of a juror is one day, unless the juror "is assigned to or impanelled on an incompleted trial," there was no need to complete the empanelment without appropriate inquiry by the judge. See G. L. c. 234A, § 44 (1990 ed.). New jurors are summonsed daily unless there is no need for them.

[2]We note that in at least two cases, the judge determined that prospective jurors were impartial even after the jurors had displayed some reluctance to answer the judge's question with a response indicating impartiality. The defendant challenged these jurors. See Appendix.

bly determine, after a meaningful inquiry, that a juror's doubts about his or her own impartiality are unfounded, that determination should be made after the judge conducts an inquiry that could be reasonably expected to determine impartiality. See Appendix. That determination should come from the juror's answers to the judge's questions, and not from answers suggested or, in fact, required by the questions. An inquiry into impartiality must be fair and neutral. Jurors should not be coerced into a particular response.

During the judge's questioning of potential jurors, the defendant repeatedly objected to the form of the judge's questions, pointing out that the judge's inquiries did not address the jurors' ability or intent to weigh the evidence introduced at trial fairly and impartially. Because the defendant exhausted his peremptory challenges, this case differs from *Commonwealth* v. *Ascolillo,* 405 Mass. 456 (1989), and *Commonwealth* v. *Amazeen,* 375 Mass. 73 (1978), relied on by the Commonwealth. In *Ascolillo,* prospective jurors who were related to police officers were seated on the jury only after they had expressly indicated that they could be impartial in their deliberations. In *Amazeen,* there was no harm to the defendant even if the judge erred in not excluding a potential juror for cause, as the defendant peremptorily challenged this juror and did not exhaust all of his peremptory challenges. Here, however, the defendant was forced to expend peremptory challenges excluding jurors who, on meaningful examination, may have been excludable for cause or for bias. "The defendant suffered a prejudicial diminution of peremptory challenges warranting reversal and a new trial." *Commonwealth* v. *Susi,* 394 Mass. 784, 789 (1985). We note further that the defendant has adequately shown that he would have exercised a proper peremptory challenge, had another been available, to exclude at least one of the sitting jurors. "[T]he erroneous denial of the right to exercise a proper peremptory challenge is reversible error without a showing of prejudice." *Id.* at 789, quoting *Commonwealth* v.

*Wood,* 389 Mass. 552, 564 (1983). We therefore reverse the defendant's convictions.[3]

2. *Issues likely to recur at a retrial.* A. *Allowance of witness to be seated at prosecution table.* The defendant asserts that it was reversible error for the judge to allow a police officer witness to sit at the Commonwealth's table during trial, maintaining that such a seating arrangement was a tacit endorsement by the Commonwealth of the officer's credibility. The officer at issue was the chief investigator in the case, and coordinated much of the scientific testing and other investigative work related to the case.[4]

We have recognized that frequently a police investigator's presence is essential to the management of a case during trial. See *Commonwealth* v. *Perez,* 405 Mass. 339 (1989); *Commonwealth* v. *Salcedo,* 405 Mass. 346 (1989); *Commonwealth* v. *Therrien,* 359 Mass. 500, 508 (1971). While we have cautioned the Commonwealth to be wary of deciding to have an essential witness sit at the counsel table, we also have determined the necessity of reserving the determination of the need for such a seating arrangement to the discretion

---

[3]The judge said to counsel about the jurors: "You know, you get used to all the fakers up here after a while. Everybody tells them what to say when they come up and see the Judge, so they can get out of jury service. Some of it is pretty sad. They ought to get lessons in faking."

Judges and lawyers are reminded that jurors are essential to the administration of justice. The jury system provides the most important means by which laypersons can participate in and understand the legal system. "It makes them feel that they owe duties to society, and that they have a share in its government. . . . The jury system has for some hundreds of years been constantly bringing the rules of law to the touchstone of contemporary common sense." 1 W. Holdsworth, A History of English Law 348-349 (3d ed. 1922).

[4]The defendant cites as support three inapposite Federal cases. *United States* v. *Gonzalez Vargas,* 558 F.2d 631 (1st Cir. 1977); *Patriarca* v. *United States,* 402 F.2d 314 (1st Cir. 1968), cert. denied, 393 U.S. 1022 (1969); and *United States* v. *Cotter,* 425 F.2d 450, 453 (1st Cir. 1970), focused on prosecutors' express statements of personal beliefs regarding the merits of a case in closing argument. These cases merely emphasize the judicial prohibition on an attorney's expression of his or her personal convictions during trial, a principle we do not dispute; they do not address the issue of seating arrangements at trial.

of the judge. *Perez, supra* at 344. We therefore conclude that the judge's allowance of the Commonwealth's request to have the police officer seated at the Commonwealth's table was not an error of law.

B. *Denial of motion to sever.* The defendant contends that the judge's decision to join for trial the armed robbery charge and murder charge arising out of the events of November 26 with the armed robbery charge arising out of the events occurring a week earlier at the same address was reversible error. We review the judge's decision to join the charges for trial for errors of law. See *Commonwealth v. Mamay*, 407 Mass. 412 (1990); *Commonwealth v. Sylvester*, 388 Mass. 749 (1983). We conclude the judge's refusal to sever was not error.

The defendant argues that the only common thread between the two incidents was that they occurred at the same address, asserting that the first crime consisted of an armed robbery of a card game, whereas the second crime was a murder "not related to the card game," and that therefore "the two offenses can hardly be said to be 'related' " within the meaning of Mass. R. Crim. P. 9 (a) (1), 378 Mass. 859 (1979). As the Commonwealth notes in its brief, however, the murder of November 26 occurred during another armed robbery of participants in a card game, at the same address, less than a week after the initial armed robbery; the assailants in both incidents employed the same tactics and type of weapons; and the defendant was identified as the assailant in both armed robberies.[5] Separate trials are not required merely because offenses occurred on different dates, *Mamay, supra* at 412, or involved different victims. See, e.g., *Commonwealth v. Garafolo*, 23 Mass. App. Ct. 905 (1986); *Commonwealth v. Mahar*, 21 Mass. App. Ct. 307 (1985); *Commonwealth v. Doyle*, 5 Mass. App. Ct. 544 (1977). We

---

[5]That the evidence against the defendant in each of these incidents was not merely circumstantial is significant. See, e.g., *Commonwealth v. Blow*, 362 Mass. 196, 200-201 (1972) (where no identification of defendant made, and evidence against him for one offense was purely circumstantial, jury were likely influenced by cumulative effect of evidence).

cannot say, therefore, that the judge's decision to join the offenses was an abuse of discretion or an error of law. See *Commonwealth* v. *Good*, 409 Mass. 612 (1991); *Commonwealth* v. *Tobin*, 392 Mass. 604 (1984); *Commonwealth* v. *Chalifoux*, 362 Mass. 811 (1973).[6]

The judgments are reversed, the verdicts set aside, and these matters are remanded to the Superior Court for trial.

*So ordered.*

APPENDIX.

Examples of the judge's inquiries include the following:

THE JUROR: "My brother was stabbed to death, your Honor."

THE COURT: "How long ago?"

THE JUROR: "About twenty years ago, it is like yesterday. . . ."

THE COURT: "Do you think you could listen to the evidence here and decide whether this man is guilty or not guilty? You don't think this guy stabbed your brother, right?"

THE JUROR: "I know he didn't."

THE COURT: "Yes, okay. And, you know, in here, we have a system in this country that average citizens come from home and come from work and sit on juries, and listen to the evidence, and if they think someone is not guilty, they say he is not guilty. If they think he is guilty, they say he is guilty."

THE JUROR: "Yes."

THE COURT: "Do you think you can do that?"

THE JUROR: "I don't know."

THE COURT: "What?"

THE JUROR: "I really don't know."

. . .

---

[6]Defense counsel unsuccessfully attempted to introduce a typed transcript of a witness's pretrial testimony. The judge refused to admit the typed transcript of the witness's prior testimony as a prior inconsistent statement to impeach. That ruling was well within the judge's discretion. Where a witness's statements at trial do not plainly contradict prior statements, the judge has wide discretion to deny the admission of the prior statements in evidence. *Commonwealth* v. *McGowan*, 400 Mass. 385, 390-391 (1987). See also *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982).

THE COURT: "You don't know whether you can do that or not? Are you willing to give it a try?"

THE JUROR: "Yes, your Honor."

THE COURT: "Okay, you can stay with us."

DEFENSE COUNSEL: "Challenge for cause."

. . .

THE COURT: "What can we do for you?"

THE JUROR: "I'm prejudiced."

THE COURT: "You are what?"

THE JUROR: "I'm prejudiced."

THE COURT: "We are all prejudiced?"

THE JUROR: "All right, well, my mother was mugged last November, on trying to cross Truman Highway, Hyde Park Avenue. She was hospitalized for three days."

THE COURT: "Tell me about you, what happened to you?"

THE JUROR: "Nothing. I wasn't there, my mother was. And I had to have her at my home for two weeks."

THE COURT: "Yes. You are a good daughter, good daughter. What else?"

THE JUROR: "Well, for another one, I work."

THE COURT: "Was this the fellow that did it?"

THE JUROR: "No, I don't think so. I don't know, I wasn't there."

THE COURT: "Well, I can guarantee he wasn't."

THE JUROR: "Huh?"

THE COURT: "I can guarantee he wasn't."

THE JUROR: "I know, I heard November."

THE COURT: "Yes."

THE JUROR: "Yeah."

THE COURT: "Do you think you could listen to the evidence, and at the end of the case after you have heard all of the evidence decide whether or not he is guilty or not guilty? And if he is not guilty, say he is not guilty? Are you willing to do that?"

THE JUROR: "I don't know. I'll be honest with you, I really don't know."

THE COURT: "Well, no one knows."

THE JUROR: "Yeah."

THE COURT: "But if he is not guilty, would you say he is guilty because your mother —"

THE JUROR: "Oh, no."

THE COURT: "— was mugged?"

THE JUROR: "No."

THE COURT: "What? If based upon the evidence he is not guilty, you will say he is not guilty, is that correct?"

THE JUROR: "I guess, yeah."

THE COURT: "That's all we can ask of a juror."

THE JUROR: "Okay."

THE COURT: "Okay?"

THE JUROR: "Um-mum."

DEFENSE COUNSEL: "Challenge for cause."

THE COURT: "You are probably challenging a good juror, that's why I don't listen."

. . .

THE JUROR: "I don't honestly feel I could serve, your Honor."

THE COURT: "Why?"

THE JUROR: "Because —"

THE COURT: "Are you an American citizen?"

THE JUROR: "Yes, but I'm very prejudiced and I think he is guilty. I just, that's the way I feel after what has —"

THE COURT: "How can you say that unless the whole purpose is to come up here and get out so you can't serve on the jury."

. . .

THE JUROR: "Well, I'm very prejudiced and that's how I feel. After what's been going on in Dorchester and Roxbury, I just feel very strongly."

THE COURT: "Well, the Court will be telling you that, you know, everybody has prejudice. I have prejudice, Counsel have prejudice —"

THE JUROR: "Yes."

THE COURT: "— but we put them aside."

THE JUROR: "I know."

THE COURT: "And try to do our duty as a citizen."

THE JUROR: "Sorry, I can't be honest, I have to be honest. I can't be honest —"

THE COURT: "So if the defendant is not guilty, you are going to say he is guilty because of your prejudice?"

THE JUROR: "Well, there has been a lot that's been going on —"

THE COURT: "No, no, no, no. I'm going to be telling you that the case has to be decided on the evidence you hear in the courtroom."

THE JUROR: "Well, I don't think I could say he's not guilty."

THE COURT: "So, if you determine he is not guilty, you are going to say he is guilty anyway, is that right?"

THE JUROR: "I would rather not be on, because I don't want to put myself in that position."

THE COURT: "Well, I'm not asking you that. Are you telling me that if you determine he is not guilty, you are going to say he is guilty?"

THE JUROR: "No, but I mean, I don't know, I don't know. That's why I just said I can't be honest about it. I just cannot be in that position."

THE COURT: "Well, we can try anyway so you can stick around. Okay."

THE JUROR: "Okay."

THE COURT: "Thank you."

DEFENSE COUNSEL: "Challenge for cause."

. . .

THE JUROR: "A close friend of mine was murdered, your Honor, and the murderer was never caught, so I really don't think I can give a good judgment towards the defendant."

THE COURT: "Well, what has the defendant got to do with that?"

THE JUROR: "Well, it's —"

THE COURT: "Where did it happen?"

THE JUROR: "I know, Charlestown."

THE COURT: "Charlestown?"

THE JUROR: "Yeah."

THE COURT: "There are no black guys in Charlestown."

THE JUROR: "I know that, your Honor."

THE COURT: "Right? So, you know it wasn't this guy?"

THE JUROR: "No, I know that?"

THE COURT: "What?"

THE JUROR: "I know that, yeah."

. . .

THE COURT: "So, that if you determine he is not guilty, you are not going to say he is guilty because you are from Charlestown, are you?"

THE JUROR: "I don't understand that. Do you mean because I come from Charlestown."

THE COURT: "If you determine he is not guilty, will you say he is not guilty?"

THE JUROR: "Of course I would, but I would still have that in my mind."

DEFENSE COUNSEL: "Challenge for cause."

. . .

Commonwealth *v.* Auguste.

THE COURT: "The Court finds the remaining members of the panel to stand indifferent. Proceed with the jury selection, . . . ."