RUBIN, J., dissenting.
This is a straightforward case. Both the public and the defendant are entitled to fair and impartial jurors, *823 and the requirement of fairness and impartiality includes the ability to attend to and fairly to consider the evidence and the judge's instructions. See Commonwealth v. Sleeper, 435 Mass. 581, 589, 760 N.E.2d 693 (2002) ("Both the Commonwealth and the defendant are entitled to an attentive jury"). Therefore, as the Supreme Judicial Court reminded us during the pendency of this very appeal, "As a general principle, it is an abuse of discretion to empanel a juror who will not state unequivocally that he or she will be impartial." Commonwealth v. Colton, 477 Mass. 1, 17, 73 N.E.3d 783 (2017). *1084 Juror number (no.) twelve would not, and did not, make any such statement. Indeed, the majority does not attempt to identify a single statement of the juror in which he said he could be fair and impartial. The very closest the juror came to that was to say, "I would definitely do my best, but I can't promise anything," which, as a matter of law, does not amount to the required unequivocal statement. The Supreme Judicial Court has already held that a juror's statement that "he would 'do [his] best' " is not an "unequivocal[ ] state[ment] that [the juror] would be impartial," and that it does not suffice to permit a juror to sit whose impartiality is in question. Commonwealth v. Vann Long, 419 Mass. 798, 804, 647 N.E.2d 1162 (1995). Juror no. twelve's "I can't promise anything" addendum only weakens his statement.
In fact, far from unequivocally stating that he would be fair and impartial, juror no. twelve stated unequivocally that he believed that he could not be fair and impartial in this matter, and never subsequently stated unequivocally that he could or would be fair or impartial or, indeed, that he could listen and attend to the evidence and the instructions. He never even said that he thought he could. It was, therefore, an abuse of discretion to seat him.
During trial, both parties moved that he be discharged because of his statements. Though the Commonwealth here attempts to defend its favorable verdict, in the trial court it went so far as to seek emergency interlocutory relief before the single justice of the Supreme Judicial Court from the refusal of the trial judge to discharge juror no. twelve.
The law is clear that no one in this Commonwealth should be required to stand trial before a juror like this who cannot unequivocally say he will fairly and impartially judge the case before him. Rather than identifying any purportedly unequivocal statement by the juror, the majority first suggests -- incorrectly in light of Vann Long -- that a judge has discretion to find a juror who says he cannot be fair or impartial nonetheless can be. More *824 fundamentally though, and more troubling because the judge never made any such finding about this juror, the majority, in order to affirm the judgments, announces without support that where a juror cannot be fair and impartial because of "frustration about the inconvenience inherent in performing jury service," he or she may nonetheless be seated. Ante at ----, 109 N.E.3d at 1076.
But there are no kinds of unfairness or partiality that are tolerable in a juror. Because I think the judgments therefore should be reversed, I must respectfully dissent.
A. The first and second days of trial. 1. Facts. At the end of the first day of trial, juror no. twelve, an undergraduate student only six weeks into his freshman year at Northeastern University (university), sent the judge a note that said, "I believe that the stress of missing school will result in an impartial [sic ] decision on my part. I am terrified that I will fail my classes and do not know if I can make a fair decision in the near future." This was a statement that juror no. twelve did not believe that he could be fair and impartial.
At a sidebar conference, the judge encouraged the juror, and told him that the university would make accommodations for jury service. The judge instructed the juror to speak to university officials about what accommodations they would make for him, and to report back. The next morning, in response to questions from the judge that reflected the judge's clear understanding of the issue, "Are you going to be able to give me attention, are you going to be able to be fair to this guy and this *1085 woman in their respective cases? Are you going to be able to listen attentively to my instructions? Are you going to be able to listen to the evidence?" juror no. twelve said only, "I would definitely do my best, but I can't promise anything."
The judge did not respect that answer but said, among other things, "People have to step up to the plate." The juror responded, "I agree that you're telling me to man up, and I will."
The judge, presumably recognizing the impropriety of shaming the juror into giving what the juror perceived as the judge's desired response, immediately said, "I'm not saying man up. I didn't say that." See Commonwealth v. Auguste, 414 Mass. 51, 58, 605 N.E.2d 819 (1992) (judge may probe impartiality with questions, but may not seat juror on basis of "answers suggested or, in fact, required by the questions.... Jurors should not be coerced into a particular response"). The judge then told juror no. twelve, "[Y]ou're almost a perfect candidate for being able to use your analytical *825 skills to be able to listen to the evidence and ... factor in ... where the evidence lead[s] you to .... You're a perfect candidate to be able to help out the Commonwealth and the defendant to make sure that their result is reached." The juror responded, "I simply don't know."
The defendant moved to discharge the juror, and his motion was denied. Although the Commonwealth did not move at this point to discharge the juror, it did at the end of trial in part "based on what he said from Day 1 that he couldn't be impartial after the opening statements and hearing from the first witness." Indeed, the Commonwealth sought emergency interlocutory relief in the Supreme Judicial Court from the order denying this motion.
2. Analysis. "As a general principle, it is an abuse of discretion to empanel a juror who will not state unequivocally that he or she will be impartial." Colton, 477 Mass. at 17, 73 N.E.3d 783. As these facts describe, juror no. twelve stated unequivocally that he believed that the stress of missing school would render him partial, and that terror at the prospect of failing his classes would compromise his ability to be fair. In response to the judge's questions, this juror would not state unequivocally that he could be fair or impartial or that he could be attentive and listen to the evidence and the judge's instructions. He did not even say that he thought he could. His strongest statement, "I would definitely do my best, but I can't promise anything," is inadequate. In Vann Long, 419 Mass. at 804, 647 N.E.2d 1162, the Supreme Judicial Court held that as a matter of law, "[I will] do [my] best" is not the requisite "unequivocal[ ] state[ment] that [the juror] would be impartial." Consequently, it cannot suffice to permit a juror to sit whose impartiality is in question. Ibid. See Commonwealth v. Prunty, 462 Mass. 295, 312, 968 N.E.2d 361 (2012). The cases put forward by the majority in which no abuse of discretion was found in seating a juror who put forth some version of "I think I could," are therefore irrelevant. Ante at ----, --- N.E.3d at ----.
Nor is Prunty, the first case cited in the majority list, ante at ----, 109 N.E.3d at 1075, which the majority describes as finding "no abuse of discretion to retain African-American juror who stated he 'would be able to do my best' to not let defendant's racial prejudice affect juror's ability to be impartial," of any relevance here. As the court there explained, Prunty did not alter the rule articulated in Vann Long that a statement that "I will do my best" is an insufficiently unequivocal statement of an ability to be fair and impartial. Prunty, supra at 311-312, 968 N.E.2d 361. The statement in Prunty was made by an African-American juror who had already expressed *1086 unequivocally *826 that he could be impartial and with respect to whom there was no reason to question whether he could be fair and impartial. Ibid. The juror made the statement when called back for further voir dire after defense counsel, whose client had made several highly offensive racist comments that were expected to be introduced at trial, attempted to utilize a peremptory challenge to strike the juror and the judge concluded that a prima facie showing had been made that it was based on the juror's race. Ibid. Defense counsel then alleged without any basis that his client's comments "certainly are going to perhaps get under the skin of somebody who might be a little bit more sensitive to that issue, particularly where that is their descent." Id. at 300, 968 N.E.2d 361. There was no evidence that the juror harbored any racial prejudice and, as the court explained, the rule of Vann Long was not applicable in that circumstance because, since "no ... bias was apparent, ... an unequivocal response was not necessary to rehabilitate the juror's impartiality." Id. at 312, 968 N.E.2d 361. By contrast, of course, it is applicable here, where there was reason to believe the juror could not stand indifferent based on the juror's explicit statement that he could not be fair or impartial.
Consistent with case law, when the defendant moved at the end of the colloquy for the juror's discharge he should have been excused for cause. That should have been the end of this case. No one would want this juror sitting on his or her own case, and the defendant was not required to have him sitting on his.
In support of its conclusion to the contrary, the majority's most fundamental conclusion is that the juror's concerns "centered on his frustration about the inconvenience inherent in performing jury service. It did not reflect partiality or bias such that retaining him constituted reversible error." Ante at ----, 109 N.E.3d at 1076. Thus even if the judge "credited" the juror's statement that his "scholastic concerns" made it impossible for him to be fair and impartial, this was "not a basis to discharge [the] juror." Ante at ----, 109 N.E.3d at 1076.
This is meritless. The law is clear that jurors must fairly, impartially, and attentively consider the evidence before them and the judge's instructions. See, e.g., Commonwealth v. Dickerson, 372 Mass. 783, 794, 364 N.E.2d 1052 (1977) ("only jurors who will fairly and attentively consider the evidence before them" may be seated). The majority concedes as much. See ante at ----, 109 N.E.3d at 1074 ("When evaluating juror impartiality," judges must among other things inquire whether potential jurors can "properly weigh the evidence, and follow the judge's instructions"). That juror no. twelve's inability *827 to fairly and impartially attend to the evidence and the judge's instructions arose from the burdens the juror concluded were put on his studies by jury service obviously does not render his service proper.
To the extent the majority by this language means otherwise, i.e., that there are some jurors who cannot be fair or impartial who may nonetheless sit, the case they cite of course does not support that proposition. Commonwealth v. Campbell, 51 Mass. App. Ct. 479, 747 N.E.2d 190 (2001), rather, held correctly that "[a] juror's complaints about the length of the proceedings, or expressions of frustration about having to serve as a juror, do not necessarily reflect the juror's inability to perform his or her function as an impartial trier of fact." Id. at 483-484, 747 N.E.2d 190. The court there made clear that, unlike in the instant case, "[t]here was no indication that the juror's complaints ... reflected an inability to perform his function as an impartial *1087 trier of fact." Id. at 484, 747 N.E.2d 190.
By contrast, in this case that inability is precisely what the juror asserted. The juror's statements were not merely understandable complaints or expressions of frustration, something that, the majority tells us, need not be taken "as an indicator of partiality." Ante at ----, 109 N.E.3d at 1075. They were actual statements by a juror who believed that he could not be fair and impartial. As the rule requiring an unequivocal statement from a juror that he or she will be fair and impartial makes clear, there is no variety of unfairness or partiality that is tolerable in a juror, and holding otherwise, as the majority appears to do here, contravenes centuries of precedent to the contrary: "[W]here there is abundant latitude for selection [of jurors,] none should sit who are not entirely impartial. This is equally demanded by the general principles of the common law, (Hesketh v. Braddock, 3 Burr. 1856,) and by those of our own constitution, requiring all judges to be as free, impartial and independent as the lot of humanity will admit. Declaration of Rights, art. 29." (Emphasis supplied.) Davis v. Allen, 11 Pick. 466, 467-468, 28 Mass. 466 (1831) (Shaw, C.J., for a unanimous court).
If instead the majority means only to say that the juror was, in fact, merely frustrated, and did not actually mean that he could not be fair and impartial, such a finding of fact --one never made by the trial judge (notwithstanding the majority's suggestions), and which cannot be made properly by an appellate court on appeal -- is foreclosed in this case by the case law that allows a finding that a juror will be fair and impartial only where a juror *828 states unequivocally that he or she will be impartial.[1] Put another way, the law mandates a particular method for determining whether jurors can be fair and impartial, a method designed to make sure no unfair or partial juror sits: the judge is required to ask them if they can be, and to take them at their word. This is precisely why, "[a]s a general principle, it is an abuse of discretion to empanel a juror who will not state unequivocally that he or she will be impartial." Colton, 477 Mass. at 17, index="143" url="https://cite.case.law/citations/?q=73%20N.E.3d%20783">73 N.E.3d 783.[2]
The majority also holds that "the judge could properly conclude that he had allayed *1088 the juror's school work concerns," ante at ----, 109 N.E.3d at 1077, without any citation to the record of what the juror actually said. Here is what the juror said: After the juror confirmed that he had contacted university officials and that they had told him that they would "work with [him]," the judge asked, "Are you going to be able to be fair to this guy and this woman in their respective cases? Are you going to be able to listen attentively to my instructions? Are you going to be able to listen to the evidence?" The juror responded, "I would definitely do my best, but I can't promise anything," words that, as described supra, as a matter of law, cannot suffice to show that a juror whose impartiality is in question can stand fair and impartial. See Vann Long, 419 Mass. at 804, 647 N.E.2d 1162.
Concluding that the juror's response meant that the juror's concerns *829 were not allayed -- which is what the words mean -- the judge immediately asked him what would "interfere with" his ability to exercise these three essential functions, and the juror responded, "Just fear of, just completely falling behind and failing my classes and just all the stress of everything." The judge responded, "But I thought that the [university] was going to give you a little bit of an antidote, maybe not enough" (emphasis supplied). The juror then agreed with the judge that what the school would give him was not enough: "They will give a little more time, but that still means doing double the work in the same amount of time." The only other statements the juror made on the subject were, "I agree that you're telling me to man up, and I will," which the judge told the juror was somehow a misinterpretation of what he (the judge) had said, and, "I simply don't know," in response to the suggestion that he would be "a perfect candidate" to listen to the evidence and to deliberate on the case. Not one of the juror's statements even hints at the possibility that the judge had allayed his concerns.
The other reasons given by the majority for refusing to take the juror at his word are insubstantial. Stating that he could not be fair and impartial could not have been a "habit[ ] of speech" that did not mean that the juror could not be fair and impartial. See ante at ----, 109 N.E.3d at 1075. Indeed, the case in which the "habit[ ] of speech" language appears was one in which the court concluded that a juror who said he "would really hope" that he could be fair was not utilizing a mere habit of speech, but was asserting that he could not assure the judge that he could be impartial. Vann Long, supra. Today is the first time either of our appellate courts has held that the words of someone who did not unequivocally state that he could be fair and impartial might merely have been a habit of speech. Yet no halfway competent English speaker would habitually use the phrases, "I believe that the stress of missing school will result in [a partial] decision on my part," "I am terrified that I will fail my classes and do not know if I can make a fair decision in the future," or "I can't promise anything," with respect to fairness to the parties or ability to listen to the evidence or the instructions, to mean, "I can be fair and impartial."
Nor, of course, is it particularly impressive -- though the majority finds it "notabl[e]," ante at ----, 109 N.E.3d at 1076 -- that the juror "never again raised his concerns," when he had already twice done so only to be told by the presiding judge, on the bench and in a robe, to "step up to the plate." And while, doubtless, "the judge was *830 uniquely situated to measure juror no. twelve's demeanor and credibility," ante at ----, 109 N.E.3d at 1076, the judge never suggested that juror no. twelve was not credible or that his concerns *1089 should not be taken at face value. Because the juror would not state unequivocally that he would be fair and impartial, indeed because he would not even say that he thought he could be -- even as he agreed to sit because the judge told him to "step up to the plate" -- there is no basis in the record for a finding that he would. And no amount of meaningful gazing by a judicial officer into this juror's eyes could render his statements unequivocal expressions of an ability to be fair and impartial.
At the end of the day, there is not a single statement in the record, and the majority does not purport to point to one, in which juror no. twelve in fact said that he could be fair and impartial. This is all that is needed to decide the case and on this basis alone I would reverse.
But of course there is on this record much more. Because after the jury had been instructed, but before deliberations began, this selfsame juror sent another note to the judge, this one stating, "I believe I may know information that would affect my ability to judge the case based solely on the information received in the trial."
B. After the jury were instructed. 1. Facts. Called to sidebar after sending the note just described, juror no. twelve said, "I heard about how the jury actually has more power than you expressed, that they can judge not only based on just information, but whether they believe the law is fair, or their personal convictions ... to judge guilty or not guilty."
The judge explained that what the juror had heard about was jury nullification. The judge said, "That is not permitted. That is definitely not permitted ...." Nonetheless, the juror still hesitated when the judge asked, "Is there any question of your ability to be able to take the law as I gave it to you, and apply it to the facts as you and your other jurors find them?"
The judge decided therefore to go through the law on which the entire jury had been instructed, element by element, asking this one juror whether he had any difficulty understanding that law and applying it to the facts as he found them. When the judge reached the point of explaining the elements of possession of a weapon, and in particular that knives with certain kinds of casements, when one-and-one-half-inches in length or longer, are defined as dangerous weapons, he asked, "Do you have any problem with taking *831 the law as I give it to you, the statute that I gave you, and applying it to the facts as you might find them?" and juror no. twelve said, "I don't believe that the law should be that a knife of that size should be a dangerous weapon, but I guess ...."
The judge then said, "Well, you know what you get to do with that, and I'm not being facetious, you get to call up your legislator and you get to ask him to change the law, but that's the law as it is right now." The judge then went on to quarrel with the juror's understanding of the law on which he had now twice been instructed, saying, "It's not one-and-a-half inches, it's with that casement ...." When finally asked again, "Do you have any problem applying that law?" the most the juror would muster was, "I guess not."
Still, the judge did not dismiss the juror. But, correctly, the judge did say, "I guess not is not good enough for me because it's something that you may disagree with." He then went on, "You have every right. I disagree, we all disagree with some of the laws as it relates to some of the things that are prohibited by our government.... But that's what the law is, and as a juror, regardless of your personal beliefs you have to apply the law. Will you be able to do that?"
*1090 Having thus been told that "yes" was the only answer that the judge would accept -- "I guess not is not good enough," the judge said -- the juror did not even then say yes. He responded again, "Well I thought that the jury had the power to choose whatever way to ...." The judge interrupted the juror and said, "I just told you it doesn't," which is incorrect as a matter of law, see Commonwealth v. Hebert, 379 Mass. 752, 755, 400 N.E.2d 851 (1980) ("[I]t remains within the power of a juror to vote his or her conscience"). The juror responded, "So, there's a legal punishment if the jury does not ...."
He was cut off by the judge, who misunderstood the juror's statement, thinking that he was addressing punishment of the defendant when, as the record reflects, the juror meant that he misunderstood the judge to have told him -- what is also incorrect -- that he (the juror) would be punished by law if he engaged in jury nullification.[3]
At this point, unsurprisingly, the defendant requested again that *832 the juror be discharged and, equally unsurprisingly, the Commonwealth joined in that motion.
2. Analysis. Although of course the Commonwealth here argues in support of the verdict, at trial the prosecutor joined in the motion to discharge the juror based "on what [juror no. twelve] said from Day 1 that he couldn't be impartial after the opening statements and hearing from the first witness, and the fact that again now he's saying he doesn't believe that the law --." The judge denied the motion. (And, less than two hours later the prosecutor informed the judge that she had filed a motion under G. L. c. 211, § 3, to the single justice of the Supreme Judicial Court on an emergency basis to stay proceedings, and appealing the refusal to discharge juror no. twelve, a request that, given its interlocutory posture, the single justice unsurprisingly denied.) Having failed to persuade the judge, the Commonwealth is not technically judicially estopped from defending the seating of the juror here, see Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 644, 824 N.E.2d 23 (2005) (judicial estoppel precludes party from "asserting a position inconsistent with a position previously and successfully asserted" [emphasis supplied] ), but its postverdict defense of the seating of the juror rings particularly hollow in light of its strenuous challenge to the juror at the time of trial.
By the time of the joint motion to excuse the juror, he had repeatedly stated an inability or an unwillingness to apply the law as given, and he should have been excused for cause. Indeed, there can be little doubt that the judge's lengthy and repeated statements to the juror -- including *1091 both a refusal to accept an answer that the juror could not follow the law, and leaving the juror with the incorrect impression that he could be punished for voting his conscience -- may well have "affect[ed] the juror's *833 judgment." Hebert, 379 Mass. at 755, 400 N.E.2d 851 (judge's "coercive" interaction with juror, where juror believed that Commonwealth had proved each element of crime beyond reasonable doubt but could not in good conscience convict, was improper); Auguste, 414 Mass. at 58, 605 N.E.2d 819 (juror may not be seated on basis of "answers suggested or, in fact, required by the [judge's] questions").[4] For this independent reason, the juror should have been dismissed. And even if either his statements on the first and second days of trial, or his statements after the jury were instructed, alone would not have warranted it, certainly taken together they required his dismissal.
Although I appreciate that trial judges sometimes may have a difficult task in ensuring that jurors do not impermissibly avoid their obligation to serve, and while the judge's decision not to dismiss juror no. twelve appears to have been at least partially motivated by the desire to avoid a mistrial,[5] as both parties recognized below, he pushed too hard in this case, and impermissibly failed to excuse juror no. twelve for cause.
For these reasons, it seems to me that a reversal of the judgments *834 is required. I therefore respectfully dissent.

The majority goes so far as to assert that the judge "credited the juror's statements as being unequivocal," ante at ----, 109 N.E.3d at 1077. The transcript shows that the judge made no finding that the statements were unequivocal nor, as the text makes clear, could he. Nor did the judge's hastily prepared findings, made in writing during the brief pendency of the Commonwealth's own interlocutory appeal from the judge's denial of its motion to discharge the juror, say there was an unequivocal statement by the juror that he could be fair and impartial. Indeed, they do not, and could not, say even that the juror said he could be fair or impartial.

The majority asserts that I am advancing a " 'rule' ... without support," ante at ----, 109 N.E.3d at 1077. But the text quoted supra is contained in the Supreme Judicial Court opinion in Colton, which I cite. Quarreling essentially with that decision, the majority says that the rule "would strip the judge of any discretion to assess a juror's credibility and would relegate our appellate role to simply determining whether all of the 'magic words' had been spoken in the colloquy." Ante at ----, 109 N.E.3d at 1077.
Determining whether someone said something unequivocally does not involve a credibility determination, nor does requiring an unequivocal answer to one question mean that a colloquy is nothing more than a series of required words. Finally, no "magic" words must be spoken. Just some version of the word "yes" -- even, "Yes, I think so," may suffice, see Colton, supra -- something the juror here, even under pressure from the judge to "step up to the plate," indeed, even after agreeing to sit, could never bring himself to say.

I note that, while courts have long held that jurors should not be instructed that they have the power to nullify, no court of which I am aware has ever approved an instruction --erroneous as a matter of law -- that the jury lacks this power. See Hebert, supra ("[I]t remains within the power of a juror to vote his or her conscience"); Commonwealth v. Floyd P., 415 Mass. 826, 832 n.6, 615 N.E.2d 938 (1993) ("Cases acknowledge that, while it is improper for a jury to take such action, in practice they have the power to accomplish such a result"). While the judge therefore should not instruct a juror that he or she has the power of nullification, it also cannot be permissible to instruct a juror falsely that he or she lacks the power to vote his or her conscience, or to leave an impression that there is some punishment that may be associated with doing so. The majority does not even attempt to justify the judge's erroneous instruction, and claims only that "the matter is not before us." Ante at ----, 109 N.E.3d at 1079. But the defendant argued on appeal that "it remains within the power of a juror to vote his or her conscience," quoting from Hebert, supra, and that "the judge did not so instruct this juror." Although I do not believe we need to reach the issue, this does suffice to raise it.

The majority is of course correct that the judge did not tell the juror that he would be punished for engaging in jury nullification, but this does not change the fact that the juror clearly, and incorrectly, believed that he could be punished. The majority's implicit conclusion -- that it somehow matters that the judge is less blameworthy for neglecting to correct the juror's obvious misconception than he would have been for creating it -- is plainly wrong. See ante at ----, --- N.E.3d at ----. Our question is whether the defendant received a fair trial, and the fact is that a citizen entered the jury room believing falsely that he could be punished for voting his conscience.

After his colloquy with juror no. twelve on the second day of trial, the judge stated, "I'm going to keep it as a work in progress. He's not going to be a juror that is going to deliberate if he's impaired. I'm with you on that part of it, and I think I may do a little inquiry as to the detail of this letter, and I think I did a splendid job of trying to salvage this so you don't mistry the case ...." Also, after learning that the defendant and the Commonwealth were seeking relief from the single justice of the Supreme Judicial Court, he (the judge) requested that a court room clerk transmit certain statements to the clerk of the Supreme Judicial Court, including that, "The jury has been reduced to thirteen, and one of the jurors received a commitment from this Court that they would [be] released from duty to complete travel plans, and it is likely that a mistrial will occur. Further, there are factual misstatements in the petition that can be addressed by a transcript which this Court has ordered, and at the present time this trial judge, having had the ability to inquire of the challenged juror is satisfied that he ought not to be discharged, period." The inconvenience to either party or to the judge of declaring a mistrial of course properly has no bearing on the question whether a juror stands fair and impartial.