COMMONWEALTH *vs.* FLOYD P., a juvenile.[1]

Suffolk. April 6, 1993. - July 15, 1993.

Present: LIACOS. C J. WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Rape. Felony-Murder Rule. Jury and Jurors. Practice, Criminal,* Verdict, Question by jury.

At the Juvenile Court trial of three complaints alleging delinquency by reason of armed robbery, aggravated rape, and first degree murder, it was error for the judge, purporting to act under Mass. R. Crim. P. 27(b), to accept the jury's verdict of guilty of aggravated rape and return them to deliberate further on the murder charge, where the jurors had sent a note to the judge during their deliberations indicating that at least some of them were uncertain of the relationship between a possible adjudication on the aggravated rape complaint and final disposition of the murder charge and that, in consequence, their disposition of the rape charge was merely tentative [830-832]; where the jury's verdict of delinquency by reason of first degree murder may have been based on a felony-murder theory with aggravated rape as the underlying felony, that verdict could not stand [832-833].

At a criminal trial, counsel should be afforded the opportunity to assist the judge in framing a reply to any communication from the jury having legal significance, and to place on the record counsel's objections, if any, to the course chosen by the judge. [833-834]

COMPLAINTS received and sworn to in the Boston Division of the Juvenile Court Department on November 5, 1991.

The cases were tried before *Mark E. Lawton,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joan Curran (William J. Doyle* with her) for the juvenile.

---

[1] A fictitious name for the juvenile is used in this opinion.

*Annemarie Relyea-Chew*, Assistant District Attorney (*Daniel C. Mullane*, Assistant District Attorney, with her) for the Commonwealth.

GREANEY, J. After trial on three delinquency complaints, a jury in the Boston Juvenile Court returned verdicts finding the juvenile delinquent by reason of armed robbery, aggravated rape and murder in the first degree. A subsequent "Motion to Vacate the Verdicts and For a New Trial" filed by the juvenile was denied by the Juvenile Court judge who presided at the trial. The juvenile appealed to the Appeals Court from the three adjudications of delinquency and the denial of his posttrial motion. We transferred the appeal to this court on our own motion. The juvenile has raised no issue in his brief as to the adjudication of delinquency by reason of armed robbery. As a result, we treat the appeal from that adjudication as waived. As to the two other adjudications, the juvenile contends that the judge accepted a verdict on the aggravated rape complaint that was not final and unanimous on the part of the jury, and that, by his supplemental instructions, the judge coerced the jury into adjudicating him delinquent by reason of first degree murder. We agree with the juvenile that the judge should not have directed the entry of the jury's verdict on the aggravated rape complaint. We do not reach the issue of the possible impact of the supplemental instructions because we conclude that the infirmity in the aggravated rape verdict necessitates setting aside the verdict which adjudicated the juvenile delinquent by reason of first degree murder.

The Commonwealth alleged that the juvenile had participated (with seven other individuals) in a brutal assault on the victim, who died from the combined effects of blunt trauma injuries and multiple stab wounds. The Commonwealth presented evidence that the victim had been robbed and raped prior to her death. The jury were given instructions on three theories of first degree murder (deliberately premeditated murder, murder by extreme atrocity or cruelty, and felony-murder). They were also instructed on the elements of armed robbery and aggravated rape, and that

armed robbery and aggravated rape constituted felonies that could serve as the basis for a guilty finding on the theory of felony-murder.[2] With respect to the jury's consideration of felony-murder, the judge instructed that, if the jury found that the juvenile had committed armed robbery or aggravated rape, either as a principal or as a joint venturer, they must also consider whether each felony was committed with "an intent which exhibited a conscious disregard for human life." The judge went on to state: "I'll instruct you that the felony of aggravated rape could not be committed without inherent risk to human life. This means that if you determine that the defendant has committed or attempted to commit the felony of aggravated rape, then you must find that the defendant has displayed the required conscious disregard of human life." A comparable instruction was not given with respect to the felony of armed robbery.[3] Finally, the jury were instructed on the law of joint venture and duress, the latter issue having been raised by the defendant to negate his responsibility for any of the crimes.

---

[2]The jury were instructed that "[t]he felony murder doctrine consists of three elements: one, an unlawful killing; two, that the . . . unlawful killing was committed in the course of a felony; and, three, that the felony was committed with a conscious disregard for human life."

[3]In response to the jury's request during their first day of deliberations for clarification of the theory of felony-murder as it applied to the case, the judge made more explicit what he considered to be a distinction between aggravated rape and armed robbery as those offenses relate to felony-murder. The judge gave the jury the following instruction: "Now I instruct you that the felony of aggravated rape could not be committed without inherent risk to human life. So I differentiate between aggravated rape and armed robbery. That the felony of aggravated rape could not be committed without an inherent risk to human life. This means that if you determine that [the juvenile] has committed or attempted to commit the felony of aggravated rape, then you must find that the [juvenile] has displayed the required conscious disregard of human life."

The distinction drawn by the judge does not find support in the case law. See *Commonwealth* v. *Bourgeois*, 404 Mass. 61, 64 (1989) (armed robbery is a felony inherently dangerous to human life); *Commonwealth* v. *Currie*, 388 Mass. 776, 784-786 (1983) (same). The instruction was not objected to, and it did not prejudice the juvenile's defense. *Commonwealth* v. *Dickerson*, 372 Mass. 783, 797 (1977).

The jury deliberated for six hours after receiving the case and adjourned for the night without reaching a verdict. They resumed deliberations at 9:30 the next morning. One half-hour later, the judge received a note (signed by the forewoman), which read as follows:

> "The jury has reached a guilty verdict on the first two charges, armed robbery and aggravated rape. However, two jurors will change their votes if the conviction on rape has to result in first degree murder. The jurors are at an impasse on the murder charge. What is the next step?"

An hour later, the jury and counsel were assembled in the courtroom, and the note was read in open court. Counsel had not been made aware of the contents of the jury's note, and no opportunity had been furnished counsel to address what procedure should be followed in responding to the jury. Relying on Mass. R. Crim. P. 27 (b), 378 Mass. 897 (1979),[4] the judge ordered the forewoman of the jury to sign the verdict slips on the armed robbery and aggravated rape charges (the verdict slips had, in fact, already been signed), and directed the clerk to affirm the verdicts with the jury. The transcript reflects that the jurors affirmed both verdicts.[5] The judge

---

[4] This portion of rule 27 provides as follows:

"If there are two or more offenses or defendants tried together, *the jury may* with the consent of the judge at any time during its deliberations return or *be required by the judge to return a verdict or verdicts with respect to the* defendants or *charges as to which a verdict has been reached*; and thereafter the jury may in the discretion of the judge resume deliberation. The judge may declare a mistrial as to any charges upon which the jury cannot agree upon a verdict; provided, however, that the judge may first require the jury to return verdicts on those charges upon which the jury can agree and direct that such verdicts be received and recorded." (Emphasis added.)

[5] In support of his motion for a new trial, the juvenile offered the affidavits of two news reporters who were present in the courtroom when the verdicts were taken. Both reporters stated in their affidavits that, when the jury was asked to affirm the armed robbery and aggravated rape verdicts, one of the jurors was shaking her head to indicate disagreement with the

then ordered the jury to resume deliberations on the murder charge, applying the law as he had given it to them. Defense counsel's attempts to address the judge were rebuffed until the jury had left the courtroom. At that time, defense counsel objected to the acceptance of the guilty verdict on the aggravated rape charge and to being deprived of the opportunity to request that the jury be polled on the two verdicts. Forty-five minutes after they resumed deliberations, the jury returned to the courtroom with a verdict adjudicating the juvenile delinquent by reason of first degree murder. The jurors were polled individually on the murder verdict and affirmed their decision unconditionally.

1. The juvenile contends that the judge should not have accepted the aggravated rape verdict because the jury's note indicated that the jurors had reached only a conditional or tentative agreement on the disposition of the aggravated rape charge. We agree. Massachusetts Rule of Criminal Procedure 27 (b), see note 4, *supra*, gives a trial judge discretion to require a jury to return "a verdict or verdicts with respect to any charges on which they have reached a verdict" (footnote omitted). *Commonwealth* v. *Foster*, 411 Mass. 762, 763 (1992). See *A Juvenile* v. *Commonwealth*, 392 Mass. 52, 55-56 (1984). Consistent with the rule, the judge could have accepted *unanimous* verdicts on the armed robbery and aggravated rape charges and sent the jury back to deliberate further on the murder charge. See *Commonwealth* v. *Foster*,

---

verdicts. One of the news reporters also stated that several jurors did not affirm the verdicts verbally.

A jury verdict in a criminal trial must be unanimous. *Commonwealth* v. *Hebert*, 379 Mass. 752, 754-755 (1980). "[T]he verdict is to be affirmed in open court, so that each juror has an opportunity to express his dissent to the court, in case his decision has been mistaken or misrepresented by the foreman or his fellows . . . ." *Lawrence* v. *Stearns*, 11 Pick. 500, 501 (1831). A judge should observe the jury while they affirm their verdict in open court. If it appears that a juror does not agree with the verdict, inquiry should be made or the jury should be polled. However, where a juror does not voice disagreement with the verdict, affidavits such as those filed by the news reporters in this case cannot serve to impeach the validity of a jury verdict. Our decision in this case does not depend on the contents of the news reporters' affidavits.

*supra.* Cf. *Commonwealth* v. *Diaz,* 19 Mass. App. Ct. 29 (1984) (judge, declining to accept partial, inconsistent verdicts, sent jury back for further deliberations). The authority to accept partial verdicts, however, does not encompass the power to accept a tentative or conditional verdict on any criminal charge. A jury verdict in a criminal case must be unanimous, and "[a] judge has no authority to direct a verdict when there are issues of fact to be resolved." *Commonwealth* v. *Hebert, supra* at 755.

These principles recognize that, as a practical matter, jurors may agree in the course of deliberations to a tentative compromise on the facts of a case or on the disposition of related charges as they attempt to reach unanimous agreement. See *A Juvenile* v. *Commonwealth, supra* at 56. Such tentative or conditional agreements, often forged in the course of intense discussion and negotiation, cannot have the force of a final verdict. See *United States* v. *Morris,* 612 F.2d 483, 489 (10th Cir. 1979); *Cook* v. *United States,* 379 F.2d 966, 970 (5th Cir. 1967) ("There is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination"). "A jury should not be precluded from reconsidering a previous vote on any issue, and the weight of final adjudication should not be given to any jury action that is not returned in a final verdict." *A Juvenile* v. *Commonwealth, supra* at 56, quoting *People* v. *Hickey,* 103 Mich. App. 350, 353 (1981).

In denying the juvenile's motion for a new trial, the judge concluded that the first sentence of the jury's note ("[t]he jury has reached a guilty verdict on the first two charges, armed robbery and aggravated rape") amounted to an unequivocal statement by them that unanimous verdicts on the charges had been reached, and that, "having been so informed [he] had an absolute right . . . to . . . require those verdicts to be returned." The text of the jury's communication will not support the conclusion the judge sought to draw from it as to the aggravated rape charge. The note clearly indicated that at least some jurors were uncertain of the relationship between a possible adjudication on the aggravated

rape complaint and final disposition of the murder charge, and, consequently, the jury had reached only a tentative disposition of the aggravated rape charge.[6] That the verdict slips had been signed does not suggest otherwise. See *A Juvenile* v. *Commonwealth, supra* at 56. Any doubt on a question of this importance must be resolved in favor of protecting the defendant's right to a unanimous jury verdict. See *Cook* v. *United States, supra.* We conclude that the verdict adjudicating the juvenile delinquent on the aggravated rape charge must be set aside.[7]

2. The infirmity in the aggravated rape verdict also undermines the adjudication of delinquency by reason of first degree murder. Having heard instructions on deliberately pre-

---

[6]The judge appears to have reasoned that the jury had agreed on facts that would support an adjudication of delinquency by reason of aggravated rape and by reason of murder, but that two of the jurors were unwilling to apply the law and vote for conviction on the charge of murder. Cases acknowledge that, while it is improper for a jury to take such action, in practice they have the power to accomplish such a result. See *Commonwealth* v. *Fernette*, 398 Mass. 658, 670 n.23 (1986); *Commonwealth* v. *Dickerson*, 372 Mass. 783, 811-812 (1977) (Quirico, J., concurring). See also *Dunn* v. *United States*, 284 U.S. 390, 393-394 (1932). Juries, however, are not to be instructed on their power of nullification. *Commonwealth* v. *Fernette, supra* at 670-671.

In our opinion, the jury's communication does not compel a conclusion that they were possibly engaging in nullification. The juvenile presented considerable evidence that his participation in the assault was the result of duress, and the jury was instructed and reinstructed at length on the subject of duress. Two jurors might have reasoned that the Commonwealth had not met its burden of persuasion on the issue, but remained willing to compromise by voting guilty on the lesser charges of armed robbery and aggravated rape. Alternatively, from the evidence, the jury could have found the juvenile a joint venturer or a principal in the aggravated rape, but nonetheless could have exonerated him of legal responsibility for the murder.

[7]*Commonwealth* v. *Jones*, 373 Mass. 423 (1977), relied on by the Commonwealth, is not to the contrary. In that case, the jury returned to the courtroom and asked the judge what was, in essence, the same question asked by the jury in this case in their note. In *Jones*, the judge informed the jury that the instructions they had already received were sufficient to enable them to reach a verdict, *and sent them back for further deliberations*, after which a unanimous verdict was returned. Had the judge followed the same course in this case, the error of taking a provisional verdict would have been avoided.

meditated murder, murder by extreme atrocity or cruelty and felony-murder, the jury returned a general verdict of first degree murder. The theory of murder on which they based their decision cannot be ascertained. See *Commonwealth* v. *Mandile*, 403 Mass. 93, 98-99 (1988); *Commonwealth* v. *Matchett*, 386 Mass. 492, 511 (1982). It is possible (even probable), in view of the evidence, and the several inquiries by the jury concerning the requirements of felony-murder, that the murder verdict was based on that theory, and that the verdict on aggravated rape supplied the necessary felony relied on by the jury as a prerequisite to reaching a verdict on the murder charge. In view of our conclusion that the aggravated rape verdict should not have been accepted, the possibility that the jury relied on it in subsequently returning their verdict on the first degree murder charge necessitates setting aside the latter adjudication as well. See *Commonwealth* v. *Matchett*, *supra* at 511 (verdict must be set aside where it is insupportable on ground jury may have selected).

3. What has been said disposes of the case. For the sake of completeness, and to assist future trials, we point out that the procedure followed here was irregular. It was said in *Thames* v. *Commonwealth*, 365 Mass. 477, 478 n.2 (1974), "that, where possible, any messages or questions from the jury to the judge . . . should be shown to counsel." It appears that counsel in this case were available for consultation. Further, before a judge responds to a jury communication of legal significance (and the note in this case undoubtedly was such a communication), counsel should be given the opportunity to assist the judge in framing an appropriate response and to place on record any objection they might have to the course chosen by the judge. See *United States* v. *Parent*, 954 F.2d 23, 25 (1st Cir. 1992); *Commonwealth* v. *Donovan*, 15 Mass. App. Ct. 269, 272 (1983) (when judge becomes aware of irregularity in jury deliberations, judge should seek counsel's advice in correcting problem). K.B. Smith, Criminal Practice and Procedure § 1612 (1983 & Supp. 1993). By denying participation to defense counsel at this juncture, the judge

deprived counsel of the opportunity to help shape the judge's response to the jury at a stage of the proceedings that was critical to the juvenile. *United States* v. *Parent, supra* at 25-26. The prosecutor was similarly deprived of an opportunity to suggest a course of action that might have prevented the creation of a serious appellate issue. It was also improper on the judge's part to deny defense counsel the opportunity to request that the jury be polled on the aggravated rape verdict. See *Commonwealth* v. *Fernandes*, 30 Mass. App. Ct. 335, 344 n.5 (1991).

4. The juvenile's adjudication of delinquency by reason of armed robbery is affirmed. His adjudications of delinquency by reason of aggravated rape and first degree murder are reversed, and the jury's verdicts on these charges are set aside. The complaints charging delinquency by reason of aggravated rape and first degree murder are to stand for appropriate further proceedings in the Boston Juvenile Court.

*So ordered.*