COMMONWEALTH *vs.* RICARDO BACIGALUPO.

No. 97-P-1754.

Hampden. March 10, 1999. - July 12, 2000.

Present: WARNER, C.J., SMITH, & GILLERMAN, JJ.[1]

*Practice, Criminal,* Deliberation of jury, Question by jury, Assistance of counsel, Instructions to jury, Verdict, Record. *Jury and Jurors. Constitutional Law,* Confrontation of witnesses, Assistance of counsel. *Error, Harmless.*

Although a judge at a criminal trial erred by sending the jury a response to their question without consulting counsel and without counsel and the defendant being present, the error was not reversible where the judge gave counsel an opportunity to be heard a few minutes later, and further, the error was harmless where the record made clear that, even if the judge had heard counsel's arguments before responding to the jury, she would have exercised her discretion in the same manner. [633-635]

At a murder trial, the judge did not abuse her discretion in allowing a witness's testimony to be read back to the jury at their request. [635-636]

Where, at a criminal trial, the jury returned only once without a verdict after being given an "ABA charge," the judge did not violate G. L. c. 234, § 34, by giving a *Rodriquez* charge and sending the jury out to continue deliberations. [638]

A Superior Court judge did not coerce a verdict by giving an "ABA charge" at the beginning of a day of deliberations, then giving a *Rodriquez* charge approximately six hours later when the jury indicated they were deadlocked, following which a guilty verdict was returned in about an hour. [638-639]

A criminal defendant's motion pursuant to Mass.R.A.P. 8(e), to supplement the record, was properly denied by the trial judge. [639-640]

INDICTMENT found and returned in the Superior Court Department on December 29, 1995.

The case was tried before *Constance M. Sweeney,* J.

*John M. Thompson* for the defendant.

[1]This case was argued before Chief Justice Warner and Justices Smith and Gillerman. Following the retirement of Chief Justice Warner, Justice Gelinas was added to the panel and participated in this decision.

*Brett J. Vottero,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On December 29, 1995, a Hampden County grand jury returned an indictment charging the defendant with murder in the first degree. After a jury trial on September 11, 1996, he was convicted of murder in the second degree.

On appeal, the defendant claims that the judge committed error by (1) answering a question from the deliberating jury out of the presence of counsel and the defendant and without consulting counsel before responding; (2) ordering a transcript of a witness's testimony read back to the jury; (3) coercing a jury verdict by sending the jury out twice to deliberate after they reported they were deadlocked; (4) instructing the deadlocked jury incorrectly; and (5) denying the defendant's motion to supplement the record.

We summarize the Commonwealth's evidence. On November 27, 1995, at about 1:00 P.M., the victim, an eighty-two year old man, was found on the floor of his home brutally beaten but still alive. He was rushed to a hospital where he died seven days later of blunt trauma injuries to his head and neck.

The defendant had rented a room on the second floor of the victim's house. On the morning of the 27th, at about 9:00 A.M., the victim and the defendant went to the Hampden Savings Bank. The victim cashed a check payable to the defendant in the amount of $800.00. At about 10:00 A.M., the victim's automobile was observed backing out of the victim's driveway; it was later found abandoned at Bradley International Airport in Connecticut. Sometime after 10:00 A.M., the defendant appeared at the American Airlines counter at the airport to purchase a ticket for Puerto Rico; he took the 1:30 P.M. flight. He had in his possession some of the victim's credit cards.

One of the defendant's employers, Angel Guzman, testified at trial that in late November, 1995, he had several telephone conversations with the defendant concerning "an old man" who was harassing him. On November 23, four days before the victim's body was discovered, the defendant telephoned Guzman and told him, "I'm leaving my job because this old man is 'harassing me,' [he] called me a 'Spic.' "

Sometime during the day that the victim's body was discovered, the defendant telephoned Guzman and told him, "I'm at the bank. I'm taking out some money, but this old man keeps following me." The defendant later called Guzman at

some unspecified time and said, "I did something to the old man. I think I — I pushed him, and I think I killed him."

The Springfield police learned that the defendant had used several of the victim's credit cards while on route and after his arrival in Puerto Rico. As a result, they requested assistance from the police in Puerto Rico to locate the defendant. After he was found, the police questioned him about the use of the victim's credit cards. Shortly thereafter, they received a communication from the Springfield police requesting that they arrest the defendant for murder.

The police in Puerto Rico took the defendant into custody and advised him of his Miranda rights. He thereafter admitted using the victim's credit cards to buy gold worth $1,795. He denied killing the victim, but admitted he was in the house when two other individuals, a Jamaican and a Puerto Rican, strangled the victim.

We now discuss the issues raised by the defendant.

1. *The judge's actions concerning the note from the jury.* After receiving the judge's final instructions, the jury deliberated for a short time before adjourning for the day. The next day, at some point during deliberations, the jury sent a note to the judge asking, "Could we have a copy of Angel Guzman's testimony?" Without the lawyers or the defendant being present the judge wrote to the jury as follows: "We will be happy to read the testimony back; however, this will occur at 2:00 P.M."

After the judge had made her written response to the jury's question, counsel for both sides and the defendant appeared in the courtroom, apparently after being summoned by the judge. She informed them that she had received a note from the jury approximately ten minutes before their arrival, and she told them of its contents and her written response. The judge then asked the lawyers if they had any concerns regarding her answer to the jury's query. Defense counsel objected to the judge's answer, arguing that the jury should not have Guzman's testimony read back to them but rather should be informed that they must rely on their collective memory of Guzman's testimony. The judge overruled the objection. There was no objection pertaining to the judge's actions in responding to the note in the absence of the defendant and his counsel. Shortly thereafter, Guzman's testimony was read back to the jury. The lawyers and the defendant were present at that time.

On appeal, the defendant contends that the judge committed

reversible error when she answered the jury's question in the absence of the defendant and his counsel.

A defendant has a constitutional right to be present at all critical stages of criminal proceedings. *Commonwealth* v. *L'Abbe*, 421 Mass. 262, 268 (1995). That right "derives from the confrontation guarantees of the Sixth Amendment to the United States Constitution, the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution, and art. 12 of the Massachusetts Declaration of Rights." *Id.* Further, a defendant is also entitled to have the assistance of counsel (unless it was otherwise waived) at critical stages of the proceedings. *Johnson* v. *Zerbst*, 304 U.S. 458, 462 (1938). See *Commonwealth* v. *Curtis*, 417 Mass. 619, 635 (1994). A critical stage in criminal proceedings includes those occasions when a judge is called upon to respond to a deliberating jury's communication which is of legal significance. *Commonwealth* v. *Floyd P.*, 415 Mass. 826, 833 (1993); *Commonwealth* v. *DeJesus*, 44 Mass. App. Ct. 349, 350-351 (1998).

Here, the jury's note was of legal significance because it required the judge to exercise her discretion whether (1) to permit the jury to receive a copy of the transcript, *Commonwealth* v. *Stockwell*, 426 Mass. 17, 24 (1997); (2) to have the court reporter read the witness's testimony to the jury, *Commonwealth* v. *Mandeville*, 386 Mass. 393, 405 (1982); or (3) to deny the request entirely, *Commonwealth* v. *Bianco*, 388 Mass. 358, 370 (1983). Here, the judge exercised her discretion, but did so without consulting with, and in the absence of, the defendant and his counsel.[2]

The constitutional right to the assistance of counsel is of

[2]The defendant raises another issue in his reply brief concerning the judge's actions in answering the jury's question. He claims that the record demonstrates that the judge was unaware that she had the discretion to deny the jury's request. See *Commonwealth* v. *Knight*, 392 Mass. 192, 195 (1984).

In support of his claim, the defendant points to a question that the judge asked defense counsel when he objected to the read-back of Guzman's testimony. The judge asked, "Can you cite any authority where the jury asks for a read-back and [I have to] tell them they can't have it?" Counsel could not think of any such authority.

Ordinarily, we are not required to decide an issue raised in a reply brief. *Campbell Hardware, Inc.* v. *R.W. Granger & Sons*, 401 Mass. 278, 280 (1987). However, the defendant raises an important issue which deserves to be addressed. Upon review of the entire colloquy, we hold that the judge's question merely reflected her opinion that she was not aware of any authority which

particular importance when a judge receives a communication of legal significance from a deliberating jury. The assistance of counsel at that stage requires the judge, before he or she responds to such a communication, to afford counsel the opportunity to assist in framing an appropriate answer and to place on record any objections they might have to the course chosen by the judge. *Commonwealth* v. *Floyd P.*, *supra* at 833. See *Thames* v. *Commonwealth*, 365 Mass. 477, 478 n.2 (1974) ("[W]here possible, any messages or questions from the jury to the judge should be in writing; . . . they should be shown to counsel and immediately placed on record; and . . . any reply thereto by the judge to the jury should also be placed on record in the presence of counsel, if available").[3]

The Commonwealth argues that the judge did indeed provide counsel with the opportunity to frame an appropriate response when she notified him of the jury's communication, advised him of her decision to allow Guzman's testimony to be read back, and afforded counsel an opportunity to be heard on the request before she brought the jury into the courtroom to hear the testimony.

We reject the Commonwealth's argument. The judge had already decided to allow the jury to hear the testimony and so notified the jurors *before* she told counsel of the request. The law requires a judge to allow counsel a meaningful opportunity to assist in the framing of the response to a jury's communication before an answer is given to the jury. *Commonwealth* v. *Floyd P.*, *supra*.

Because the judge by her actions violated the defendant's constitutional rights to be present and to have the assistance of counsel, the defendant claims that he is entitled to a new trial without any showing of prejudice, citing *United States* v. *Cronic*, 466 U.S. 648, 659 (1984), in support of his argument.[4] In *Cronic*, the court stated, among other things, that the actual or construc-

---

ruled she lacked discretion in the matter and, therefore, was required to refuse the jury's request.

[3]The record shows that counsel was available. As we have previously noted, when the attorneys appeared in the courtroom after the judge made her written response to the jury's note, she informed counsel that she had received the note from the jury "about ten minutes ago."

[4]In *Cronic*, the defendant was indicted for mail fraud charges involving a "check kiting" scheme. His retained lawyer withdrew shortly before trial and the court appointed an inexperienced real estate attorney to represent him. The trial court allowed the appointed lawyer only twenty-five days to prepare for

tive denial of counsel at a critical stage of a criminal trial constitutes prejudice *per se* and, therefore, amounts to an automatic reversal. See *Curtis* v. *Duval*, 124 F.3d 1, 4-5 (1st Cir. 1997), where the First Circuit, relying on *Cronic*, ruled that automatic reversal is required when a judge, sua sponte, gives a jury instruction without consulting with, and in the absence of, the defendant and counsel.

We reject the defendant's argument and hold that, because of the circumstances here, *Cronic* and its progeny do not control this matter. Although it was error for the judge to communicate her decision to the jury without consulting defense counsel (and also in his absence), she nevertheless gave him the opportunity to be heard on her decision before the read-back of the testimony occurred. Thus, there was no complete denial of the assistance of counsel. Contrast *Curtis* v. *Duval*, *supra*.

Regardless, the defendant was denied the assistance of counsel at least for a short time. We, therefore, examine that error in light of the standard employed when there is a violation of a constitutional right, i.e., reversal is not required if the Commonwealth makes an affirmative showing that the error was harmless beyond a reasonable doubt. *Commonwealth* v. *Owens*, 414 Mass. 595, 603-606 (1993).

Here, the necessary showing has been made. Even if the defendant and his counsel were informed of the contents of the note before the judge formed her response, and even if the judge had requested advice from counsel concerning an appropriate response, it is clear from the record that the judge's reply to the jury's question would not have changed — she

---

trial, although the government had taken over four and one-half years to investigate the matter.

After the defendant was convicted, new counsel appealed claiming that trial counsel was ineffective. The Tenth Circuit reversed the defendant's conviction ruling that the defendant did not have the effective assistance of counsel. *United States* v. *Cronic*, 675 F.2d 1126, 1128 (10th Cir.) The court did not base its conclusion on any specified errors but, rather, used a five-part test from which it drew an inference that counsel was ineffective. The Supreme Court reversed, ruling that it was error to use the inferential approach in determining whether the defendant's right to the effective assistance of counsel had been violated. *United States* v. *Cronic*, 466 U.S. at 653-667.

would have exercised her discretion in the same manner. See *Commonwealth* v. *DeJesus, supra* at 351.[5]

Finally, we again remind judges that defendants and their counsel have a constitutional right to be present at all critical stages of the criminal proceedings, including those occasions when judges are called upon to respond to communications of legal significance from deliberating juries. Further, judges must follow the procedures outlined in *Commonwealth* v. *Floyd P., supra,* upon receiving a note of legal significance from a deliberating jury. The failure to do so creates a serious appellate issue which indeed could result in an automatic reversal.[6]

2. *The judge's alleged error in allowing the jury's request.* The defendant claims that the judge committed error in allowing Guzman's testimony to be read back without considering alternatives and without giving a cautionary instruction.

The Supreme Judicial Court has stated that the reading of a witness's testimony to the jury at the jury's request may overemphasize certain aspects of a case, and therefore, a judge's decision to permit the reading must be exercised with caution. *Commonwealth* v. *Mandeville, supra* at 405. *Commonwealth* v. *Bianco, supra* at 370. The defendant objected to the read-back of the testimony and, therefore, we consider whether the judge committed error and, if so, whether the error was prejudicial. *Commonwealth* v. *Alphas,* 430 Mass. 8, 13-14 n.7 (1999). Here, Guzman's entire testimony, including the direct and cross-examination, was read to the jury. Immediately afterwards, the

---

[5]On appeal, the defendant focused his argument on the absence of counsel at the critical stage of the proceeding, and only makes a brief reference to his own absence at that time. The absence of the defendant at a critical stage does not automatically require reversal. *Commonwealth* v. *Caldwell,* 45 Mass. App. Ct. 42, 46 (1998). "Even though any violation of a constitutional right gives rise to presumptive prejudice, where the Commonwealth can make an affirmative showing that the error was harmless beyond a reasonable doubt, reversal of the conviction is not required." *Id.*

For the same reasons outlined in the discussion concerning the denial of the assistance of counsel, and based upon the fact that the defendant was present when Guzman's testimony was read back to the jury, we hold that the Commonwealth has made the necessary showing that the defendant's absence was harmless beyond a reasonable doubt.

[6]In his brief, the defendant refers to two other occasions where the judge responded to communications from the jury without informing the defendant and his counsel. The defendant does not make any separate arguments about those occasions, nor does he claim that they were error. Therefore, we do not consider them.

judge repeated her instruction on reasonable doubt, which the jury had also requested. Although it would have been better practice for the judge to instruct the jury that they should consider Guzman's testimony along with the other evidence, a cautionary instruction was not requested and, in the circumstances present here, was not required. *Commonwealth* v. *Mc-Colgan*, 31 Mass. App. Ct. 932, 934-935 (1991).

Accordingly, we hold that the judge did not abuse her discretion in allowing Guzman's testimony to be read back to the jury.

3. *The claim that the guilty verdict was the product of coercion by the judge.* The defendant argues that the judge coerced the guilty verdict by violating G. L. c. 234, § 34, when on two occasions the jury returned to the courtroom without a verdict and both times she ordered them to resume their deliberations. Further, the defendant argues that, even if the judge's actions did not violate the statute, she coerced the jury into returning the guilty verdict by twice giving the *Rodriquez* charge.

a. *The alleged violation of G. L. c. 234, § 34.*[7] The court has interpreted G. L. c. 234, § 34, to state that "[i]f, after due and thorough deliberation, the jury twice advise the judge that they are unable to reach a verdict, the judge may not properly send the jury out again without their consent, unless the jury ask for some further explanation of the law." *Commonwealth* v. *Jenkins*, 416 Mass. 736, 737 (1994). The statute "stands guard to prevent jurors[] . . . from being coerced into reaching a verdict in the face of views conscientiously reached and held." *Commonwealth* v. *Winbush*, 14 Mass. App. Ct. 680, 682 (1982).

We recite the facts underlying the defendant's claim. At the close of the jury's first full day of deliberations, the jury sent a note to the judge stating, "we would like to adjourn for the evening. We have not reached a verdict. We have reviewed the facts. We have taken several votes on the verdict and have not agreed on a final [verdict]."

---

[7]General Laws c. 234, § 34, reads as follows: "If a jury, after due and thorough deliberation, return to court without having agreed on a verdict, the court may state anew the evidence or any part thereof, explain to them anew the law applicable to the case and send them out for further deliberation but, if they return a second time without having agreed on a verdict, they shall not be sent out again without their own consent, unless they ask from the court some explanation of the law."

The judge read the note to the lawyers and the defendant. Before excusing the jury, the judge told the jurors, among other things, that "tomorrow morning hopefully, I'll be able to perhaps give you a little more guidance or maybe just a few little words that may help your way." The judge then informed counsel that she planned to give the "ABA charge" to the jury the next day.[8] The judge told counsel that she "was not talking about the *Tuey-Rodriquez* charge." She informed them that, in regard to the ABA charge, "[i]t is often recommended we [give that instruction] before a report of deadlock but when there is an indication that the jury is having difficulty." The judge told the lawyers that, once they looked at the ABA charge, they "[would] see it's a very gentle, extraordinarily gentle version of *Tuey-Rodriquez.*" The judge then stated that, in the morning after counsel had an opportunity to review the ABA charge, she would listen to their comments.

The next day, the prosecutor stated that he did not object to giving the ABA charge, but requested that the record reflect that the judge did not view the previous day's note as an indication that the jury was deadlocked. The judge stated that she did not consider the contents of the note as demonstrating such. Defense counsel agreed, and concurred that the ABA charge be given. The judge thereupon gave the ABA charge as a supplemental instruction to the jury.

The jury then deliberated for approximately six hours, whereupon it sent a second note which read, "We have continued to deliberate and have taken another vote. We do not agree on a verdict. We feel that further deliberation will not lead to a unanimous decision."

---

[8]In *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 97-101 (1973), the court examined the *Tuey* charge approved in *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851), which was "intended to be used when because of the lapse of time or otherwise the judge apprehends that the jury is deadlocked."

The court concluded that certain language in the *Tuey* charge could be viewed by a jury as coercive. Therefore, the court made some changes and that charge is now known as the *Rodriquez* charge.

In its decision, the court also noted that the American Bar Association's Advisory Committee on Criminal Trials (ABA), in its report entitled Standards Relating to Trial by Jury, recommended in 1968 that the *Tuey* charge not be used in its then present language. Rather, the ABA drafted a charge (ABA charge), which the court in *Rodriquez* approved for use by judges "when the jurors appear to be running into difficulty reaching a verdict." *Commonwealth* v. *Rodriquez, supra* at 101. The ABA charge can be found in Appendix B to the *Rodriquez* decision.

At that point, the judge informed both counsel that she planned to give the *Rodriquez* charge. Defense counsel objected. During the course of the discussion, the judge observed that the jury's note from the previous day did not report that they were deadlocked, "[s]o this is the first report of deadlock we have." The judge then gave the *Rodriquez* instruction, after which she told the jury to resume their deliberations. Less than one hour later, the jury returned the guilty verdict.[9]

On appeal, the defendant claims that the jury's first return (which would count toward triggering § 34) occurred when they asked permission to adjourn for the evening. According to the defendant, that return, coupled with the next return when they communicated their inability to reach a verdict, constituted two returns; when the judge ordered them to resume deliberations she violated G. L. c. 234, § 34. We disagree and hold that there was only one return: when the jury announced they were deadlocked.

The judge made a specific finding that the jury were not deadlocked at the time she gave the ABA charge. That finding is supported by the contents of the note which amounted to no more than a request to be excused from further deliberations for the evening. In these circumstances and in view of her finding, the fact that the judge gave the ABA charge does not show that she concluded the deliberations had been "due and thorough," thereby triggering G. L. c. 234, § 34. Contrast *Commonwealth v. Jenkins*, 34 Mass. App. Ct. 135, 141 (1993). Accordingly, because the jury did not return twice without a verdict, the judge did not violate G. L. c. 234, § 34, by ordering them on both occasions to resume deliberations.

b. *The claim that the judge coerced the verdict by her instructions to the jury.* The defendant claims, as an alternative ground, that the judge coerced the verdict by giving the ABA charge and the *Rodriquez* charge together on the day that the jury returned the verdict.

The defendant claims that the ABA charge is the same as the *Rodriquez* charge.[10] We disagree. The Supreme Judicial Court in approving the use of the ABA charge noted that the ABA charge

---

[9]There is nothing in the record indicating the period of time between when the jury received the *Rodriquez* charge and the return of the verdict. We accept the defendant's version that the time was an hour or less.

[10]In support of his argument, the defendant cites *Commonwealth* v. *Mascolo*, 6 Mass. App. Ct. 266, 275 n.8 (1978). In that decision, we stated that the

"is less emphatic than the [*Rodriquez*] charge and is intended for use either as part of the original instructions to the jury or as a supplemental instruction when the jurors appear to be running into difficulty reaching a verdict."

After receiving the ABA charge, the jury deliberated for approximately six hours, at which time they communicated to the judge their inability to reach a verdict. The judge then gave the jury the *Rodriquez* charge. The guilty verdict was returned in an hour or less.

The fact that the jury returned a verdict a short time after receiving the *Rodriquez* charge does not warrant the conclusion that the verdict was coerced. See *Commonwealth* v. *Smith*, 427 Mass. 245, 257 (1998) (the fact that the jury returned with a guilty verdict a mere twelve minutes after receiving the *Tuey* charge does not warrant a conclusion that the verdict was coerced). See also *Commonwealth* v. *Brunelle*, 361 Mass. 6, 12 (1972) (no error where jury returned with a verdict of guilty ten minutes after *Tuey* charge).

In these circumstances, we hold that the verdict was not coerced by the giving of the ABA charge even when it was given the same day as the *Rodriquez* charge.[11]

4. *The denial of the motion to supplement the record.* The defendant filed a motion pursuant to Mass.R.A.P. 8(e), as amended, 378 Mass. 932 (1979), to supplement the record with affidavits prepared by his trial lawyer. The affidavits stated that (1) the period between the *Rodriquez* charge and the return of the verdict was an hour or less, and (2) several members of the jury were crying when the verdict was reported. The judge denied the motion and the defendant claims error.

Here, the judge who denied the defendant's motion was the same judge who presided at trial. The judge's action on the mo-

---

ABA charge "resembles the *Tuey* charge and is apparently intended for use in the original instruction or as a supplemental instruction to a deadlocked jury."

On reflection, a reading of the ABA charge shows that it does not resemble the *Tuey* charge, nor does it have the same impact as the *Rodriquez* charge. Moreover, while we suppose that the ABA charge may be used as a supplemental charge to a deadlocked jury in place of the *Rodriquez* charge, in this instance, the jury was not deadlocked at the time the ABA charge was given.

[11]There is authority, however, indicating that giving the ABA charge twice to a deadlocked jury (which did not occur here) can amount to an error requiring a new trial. *Epperson* v. *United States*, 495 A.2d 1170, 1172-1176 (D.C. App. 1985).

tion is "essentially conclusive." *Commonwealth* v. *Robles*, 423 Mass. 62, 73 (1996). In any event, we have accepted the defendant's version of the period of time between the *Rodriquez* charge and the return of the verdict (see note 9), and found no error. In regard to the allegation that several jurors were crying at the return of the verdict, we note that defense counsel did not request the jurors to be individually polled and the jurors affirmed the verdict in open court. The judge did not commit error in denying the defendant's motion.

*Judgment affirmed.*