## COMMONWEALTH *vs*. WADE DAVIS.

No. 99-P-1633.

Berkshire. May 8, 2001. - July 11, 2001.

Present: BROWN, JACOBS, & McHUGH, JJ.

*Practice, Criminal,* Instructions to jury, Agreement between prosecutor and witness. *Witness,* Credibility, Immunity.

At a criminal trial in which the sole issue in dispute was the credibility of a government witness, the judge's erroneous answer to a jury question concerning whether the witness expected consideration for his testimony in the case created a substantial risk of a miscarriage of justice, where the judge's inadequate answer left the clear impression that there was no mechanism in the law for mitigating the punishment the witness would receive for his crimes, despite his assistance to the Commonwealth; where the judge formulated his answer without any apparent contribution from the parties; where the judge failed to instruct the jury that a witness's agreement to provide testimony in exchange for consideration with respect to pending charges did not constitute governmental endorsement of the witness's veracity; and where the prosecution's case was by no means overwhelming. [76-79]
This court concluded that G. L. c. 233, § 20I, providing that no defendant in any criminal proceeding shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity under the provisions of § 20E, did not apply to non-immunized witnesses. [79-80]

INDICTMENT found and returned in the Superior Court Department on October 2, 1998.

The case was tried before *Elizabeth B. Donovan*, J.

*Julie Ann Boyden* for the defendant.

*Joseph A. Pieropan*, Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court jury of distribution of cocaine. G. L. c. 94C, § 32A. We conclude that the erroneous answer supplied by the trial judge to a jury question created a substantial risk of a miscarriage of justice. We reverse the defendant's conviction.

The defendant was convicted largely, if not solely, on the testimony of one Francis Thornton. Some time before the events that gave rise to the defendant's arrest, Thornton himself had been arrested for distribution of marijuana. In exchange for nonspecific "consideration" from the district attorney's office, Thornton had agreed to help police arrest others involved in the sale of illegal drugs.

On August 3, 1998, Officer Timothy Face, dressed in plainclothes, used Thornton to contact a reputed drug dealer known in criminal society as "K." Thornton apparently paged K, and asked to purchase some cocaine. In due course, the defendant turned up. However, no exchange of drugs occurred, apparently because the defendant did not trust Face.

A short time later, Thornton ostensibly paged K again, and arranged to meet him on a nearby street, this time without Face. Face gave Thornton $50 to make a drug purchase. According to Thornton's testimony, the defendant appeared at the appointed spot, and sold Thornton a small bag of cocaine. There were no witnesses to the transaction (other than Thornton) who could identify the defendant. Thornton surrendered the cocaine to police, and the defendant was arrested.[1]

At trial, the sole issue in dispute was Thornton's credibility. In the absence of any physical or other eyewitness evidence linking the defendant to the cocaine exchanged during the alleged sale, Thornton was the linchpin of the Commonwealth's case. During extensive cross-examination, defense counsel repeatedly emphasized the fact that Thornton faced serious pending charges, and so had a significant motive to lie in favor of the government. Thornton conceded on the stand that he expected "consideration" in exchange for testimony inculpating the defendant. Both the prosecutor and defense counsel made the issue of Thornton's veracity the centerpiece of their respective closing arguments.

Against this backdrop, the jury asked a single question: "We know Thornton has a case pending against him and that he 'expects consideration' for his testimony in this case. We believe that his motivation to lie is positively related to the possible

---

[1]The record is ambiguous as to whether Face performed a thorough search of Thornton and his car before or after the purchase.

ranges this consideration might take. May we please know if there are [any] laws of leniency that may apply here. If so, what are they?" The judge, apparently without consulting either the prosecutor or defense counsel,[2] simply stated that "[t]here are no laws of leniency, all right?" A recess was then taken, and shortly[3] thereafter the jury returned with guilty verdicts.

The judge's response was fatally misleading. The law of the Commonwealth gives the executive branch of government virtually unlimited power to decide whether and how an alleged crime will be prosecuted. The law, therefore, would permit the government to drop all charges against Thornton if it so chose. Alternately, the government would be free to try Thornton for a lesser offense than that originally charged. Likewise, the law permits a defendant and prosecutor to submit, before trial, a joint recommendation for a sentence in exchange for a guilty plea. If the judge accepts the recommendation, it becomes the final disposition of the case. If not, the defendant is free to withdraw his plea and stand trial.

None of this was explained to the jury. The judge's inadequate answer left the clear impression that Thornton, in fact, had no basis for any realistic expectation of "consideration," i.e., that there was no mechanism in the law for mitigating the punishment Thornton would receive for his crimes, despite his assistance to the Commonwealth. That is materially misleading. The judge should have explained the options open to the Commonwealth for rewarding Thornton, as requested by the jury's question.[4] By failing so to do, the jury improperly were led to believe that Thornton had no motive to lie, and that the

---

[2]It may fairly be inferred from the record that the judge addressed only the foreman and members of the jury. There is nothing in the record to suggest that the prosecutor or defense counsel were present to hear the question or consulted regarding the answer to the question.

[3]The question was answered at 12:41 P.M., and thereafter a recess (presumably one hour for lunch) occurred. The verdicts were announced at 2:15 P.M.

[4]The Commonwealth argues that the judge's answer was not incorrect, since there are no "laws of leniency," so called, in Massachusetts. We reject this line of reasoning. Jurors are not expected to have legal training, and so are not required to couch their questions in the sometimes arcane language of the law. The jury's question was plain enough: was there any mechanism through which Thornton could receive consideration, in the form of reduced sentences for his own crimes, in exchange for his testimony? If the judge

"consideration" he had referred to in his testimony was trifling at best — certainly no incentive for perjury.

Exacerbating the error here is the fact that the judge formulated her answer without any apparent contribution from the parties.[5] A judge is required, whenever possible, to permit parties to suggest responses to jury questions, and lodge objections to perceived shortcomings.[6] See *Commonwealth* v. *Floyd P.*, 415 Mass. 826, 833 (1993); *Commonwealth* v. *Baciqalupo*, 49 Mass. App. Ct. 629, 633 (2000).

Also problematic is the fact that the judge here failed to instruct the jury that a witness's agreement to provide testimony in exchange for consideration with respect to pending charges does not constitute governmental endorsement of the witness's veracity. Absent such an instruction, the jury may well infer that the government's willingness to compensate a witness for testimony reflects the Commonwealth's endorsement of the veracity of the evidence.[7] While the absence of a cautionary charge on this point does not in and of itself amount to revers-

---

relied on the inartful (from a legal perspective) phraseology of the question to provide a misleading answer, this was improper.

[5]The Commonwealth speculates that the judge may have consulted with the parties off the record before answering the jury question. As noted above, there is nothing in the trial transcript to support this claim — just the opposite. However, if defense counsel heard the judge's response and made no objection, we conclude that such a glaring omission would, in the particular circumstances of this case, amount to ineffective representation.

[6]As a general rule, a judge faced with a jury question has an obligation (1) to seek comments from counsel before answering the question; (2) after doing so to (a) attempt to answer the question's thrust if the thrust is clear or (b) tell the jury that he can't understand the question and ask for a rephrasing or (c) tell the jury that he's not going to answer the question and why; and (3) above all, as here, not to give an answer that is misleading on a critical issue.

[7]Although the Commonwealth did not admit to the existence of any express agreement with Thornton, we nonetheless conclude that the same prophylactic measures mandated in *Commonwealth* v. *Ciampa*, 406 Mass. 257, 264-265 (1989), with respect to written agreements apply to more amorphous arrangements like the one here, where there was no binding pretrial agreement. See *Commonwealth* v. *O'Neil*, 51 Mass. App. Ct. 170, 179-180 (2001). By allowing Thornton to testify without making any express advance promises, the Commonwealth could presumably craft a reward post hoc that conformed to the quality of the service. This approach has the added advantage of permitting a prosecutor to tout the fact to the jury that no specific promises have been made to the witness. Needless to say, this tactic provides a witness who faces pending charges with an even stronger motive to lie than a witness with

ible error, at least in the absence of any express vouching by a prosecutor, the omission nonetheless was improper. See *Commonwealth* v. *Meuse*, 423 Mass. 831, 832 (1996).[8]

Finally, we note that the government's case here was by no means overwhelming. It is entirely possible that Thornton, concerned that he did not produce results when he summoned the defendant on the first occasion, transacted a sale with a more reliable dealer on the second attempt. In the alternative, Thornton could have himself supplied the drugs recovered by police in order to curry favor with the authorities. Everything turned on Thornton's perceived veracity. The judge's misleading response to the lone jury question had significant potential to affect the credibility calculus. The defendant is entitled to a new trial. See *Dartt* v. *Browning-Ferris Indus., Inc.*, 427 Mass. 1, 14 (1998), quoting from *Tuttle* v. *McGeeney*, 344 Mass. 200, 208 (1962) ("when erroneous instructions 'tended to confuse and mislead the jury,' substantial justice required a new trial"). See also *Commonwealth* v. *DeCicco*, 51 Mass. App. Ct. 159, 168 (2001) (Brown, J., dissenting).

One last point. We conclude that G. L. c. 233, § 20I, does not apply to non-immunized witnesses.[9] While there is much commonsense support favoring extension of the principles of § 20I to witnesses who, while not formally immunized, have strong potential to lie by virtue of pending criminal charges, the scope of the provision has been interpreted narrowly. See *Commonwealth* v. *Shaheen*, 15 Mass. App. Ct. 302, 305 (1983) (G. L. c. 233, § 20I, does not apply to witness who has been

whom a bargain is made before trial. The need for a cautionary instruction, therefore, is even more acute in situations like the present case. See *Commonwealth* v. *Lindsey*, 48 Mass. App. Ct. 641, 645 n.4 (2000). See also *Commonwealth* v. *DeCicco*, 51 Mass. App. Ct. 159, 168-169 (2001) (Brown, J., dissenting) (power to reward or punish government witness who faces pending charges gives Commonwealth tremendous advantage in criminal trials, and must be disclosed fully to jury).

[8] In view of our decision, we need not pass on the question of whether the prosecutor impermissibly vouched for Thornton's credibility. Needless to say, such conduct must be avoided.

[9] General Laws c. 233, § 20I, provides, "[n]o defendant in any criminal proceeding shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity under the provisions of [G. L. c. 233, § 20E]."

promised dismissal of pending indictments in exchange for testimony against accomplice). This interpretation is entirely consistent with the plain language of the statute.

The verdict is set aside and the judgment is reversed. The case is remanded to the Superior Court for such further proceedings as the Commonwealth may elect to pursue.

*So ordered.*