COMMONWEALTH VS. JOHN ZEKIRIAS.

Plymouth. November 4, 2004. - December 14, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Assault and Battery on Certain Public Officers and Employees. Practice, Criminal,* Verdict, Polling of jury, Discovery.

At the trial of a criminal complaint charging the defendant with two counts of assault and battery on a public employee, in violation of G. L. c. 265, § 13D, the manner in which the judge resolved an inconsistency between the jury's verdicts and the legal principles on which they had been instructed invaded the province of the jury and compromised the integrity of the verdicts. [31-34]

Statement regarding the duty of the Commonwealth in a criminal case to provide discovery to the defense in a timely manner. [34-35]

COMPLAINTS received and sworn to in the Plymouth Division of the District Court Department on August 30, 2001.

The cases were tried before *H. Gregory Williams,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*R. Brian Snow* for the defendant.

*Mary Lee,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant was charged in a criminal complaint with two counts of assault and battery on a public employee, in violation of G. L. c. 265, § 13D, and tried before a jury in the District Court. The jury properly were instructed that in order to convict of the offenses charged, they would have to find the defendant's conduct either intentional or reckless, and that it would not be sufficient for the Commonwealth to prove that the defendant had acted negligently. The verdict slip gave the jury the option of not guilty or guilty without providing for a specific finding of "reckless" or "intentional." When the jury announced their verdicts, the foreperson stated that the defendant was guilty of "negligent assault and battery"

on both counts. The word "negligent" was also handwritten on both verdict slips, below a box that was checked "guilty offense as charged." Over the defendant's objections, the judge individually polled each juror as to whether he or she intended to convict the defendant of reckless assault and battery on a public employee. Each juror replied in the affirmative. The judge accepted the jurors' representations and announced the verdicts to be recorded as guilty on two counts of assault and battery on a public employee on the theory of reckless assault and battery.

The Appeals Court concluded, in an unpublished memorandum and order under its rule 1:28, that the judge correctly responded to the ambiguous verdict in an evenhanded way that clarified and eliminated possible questions concerning the jury's intended verdicts. See *Commonwealth* v. *Zekirias*, 61 Mass. App. Ct. 1104 (2004). We granted the defendant's application for further appellate review and now conclude that the method employed by the judge to ascertain the jury's true intention could have affected the integrity of the verdicts. Accordingly, we vacate the judgments entered against the defendant and remand the case for a new trial.

We summarize the events leading to the charges. On August 30, 2001, the defendant appeared for a magistrate's hearing at the Plymouth Division of the District Court Department to contest a traffic ticket that had been issued to him by a State trooper. At the conclusion of the hearing, the defendant became enraged and began yelling loudly at an assistant clerk of the District Court. An electronic signal was activated that summoned two court officers, Charles H. Bletzer and Ann L. Daley, to the scene. The court officers entered the room and directed the defendant, who was wildly gesturing with his arms and shouting obscenities, to leave. When the defendant continued to flail his arms, the court officers attempted physically to remove the defendant from the court house. In the ensuing struggle, each officer was hit in the forearm. The defendant (still swearing and waving his arms in the air) was escorted off the premises by a number of court and police officers.

Once outside, the defendant was approached by Officer Lawrence Rooney of the Plymouth police department, who

identified himself as a police officer and advised the defendant "to calm down" and to "leave the area." The defendant at first refused to move and continued to shout profanities. The defendant eventually crossed the street in front of the court house, followed by Officer Rooney and six or seven other court and police officers, and was arrested. The defendant subsequently was charged with the following offenses: two counts of assault and battery on a public employee; one count of threatening to commit a crime (G. L. c. 275, § 2); one count of disturbing the peace (G. L. c. 272, § 53); and one count of resisting arrest (G. L. c. 268, § 32B).[1] The charges with which we are concerned are those of assault and battery on a public employee.

The Commonwealth's case consisted, in large part, of the testimony of Court Officers Bletzer and Daley and the testimony of Officer Rooney. The defendant's trial counsel had received, prior to trial, a copy of Officer Rooney's written police report concerning the arrest. The Commonwealth began its case with the testimony of Court Officer Bletzer. During his cross-examination, it was revealed that both Court Officers Bletzer and Daley had written internal incident reports, at the request of the chief court officer, which had not been provided to the defendant's trial counsel. During a sidebar conference, the prosecutor initially professed no knowledge of the existence of these reports. On questioning by the judge, however, the prosecutor acknowledged possession of Court Officer Daley's statement, and during a brief recess, the prosecutor discovered both written statements in his case file.

The defendant's trial counsel immediately moved for a dismissal or mistrial. The prosecutor argued against either, explaining that he had assumed that Officer Rooney had provided the defendant with the documents, and suggesting, as an alternative explanation, that the documents could have been sent to the defendant's former attorney. The judge found "no reason to doubt" that the defendant's trial counsel had not received the two reports. Nevertheless, he concluded that the

---

[1]The jury found the defendant not guilty of the charge of threatening to commit a crime and returned guilty verdicts on the charges of disturbing the peace and resisting arrest. The latter verdicts against the defendant have not been appealed.

defendant had suffered no prejudice and denied his motion for dismissal or mistrial. A short recess was taken (during which time copies were prepared for the defendant's trial counsel), and the trial resumed. The two witness reports were admitted as exhibits for the record.

As has been stated, the judge correctly instructed the jury on the offense of intentional or reckless assault and battery on a public employee. During his charge on reckless assault and battery, the judge cautioned the jury that a finding of negligence would not suffice to convict the defendant. The judge stated:

> "Now, on [the theory of reckless assault and battery], it is not enough for the Commonwealth to prove that the defendant acted negligently, that is, acted in a way that a reasonably careful person would not. It must be shown that the defendant's actions went beyond mere negligence and amounted to recklessness. . . . If you find that the defendant's acts occurred by accident, then you must find the defendant not guilty of this charge."

A summary of the facts relating to the jury's return of the verdicts is set forth at the outset of this opinion. We now amplify that summary. After deliberation, the jury submitted written verdict forms to the clerk, and the foreperson announced that the defendant had been found guilty of "negligent" assault and battery of Court Officers Bletzer and Daley. An examination of the written verdict forms also revealed that the jury had specifically indicated that the defendant had been found guilty of "negligent" assault and battery of each public employee. The defendant's trial counsel and the prosecutor approached the bench. The defendant's trial counsel argued that the jury's decision actually constituted not guilty verdicts. The prosecutor claimed that the jury obviously had intended to find "reckless" assault and battery. Over the defendant's objection, the judge decided to poll the jury on their intent.[2]

The judge first reminded the jury that they had been instructed

---

[2]The following are the judge's actual words to counsel:

> "I think the only way out of this is for me to, it's a little confusing at this point. I don't think it adds up to being not guilty, but I think about all I can do is poll the jury and remind them as to what they were

to consider intentional and reckless assault on a public employee. The judge then told the jury:

> "Those were the two theories that the Commonwealth proceeded on and that if you were to find the defendant's conduct negligent, that would not translate to a guilty verdict for either of those two theories. In other words, one of the theories was intentional. The other theory was reckless conduct that amounted to assault and battery on a public employee. And so what I have here is something that's sort of, and this is very unusual, as you can probably appreciate, something that requires some explanation from you as to what your intent was."

At this point, the jury foreperson volunteered to the judge, "It was reckless, is what we were looking for, Your Honor." The judge asked the foreperson if he was "a hundred per cent confident" of that, and the foreperson replied, "Yes." The judge then inquired of the jury panel: "[W]as that the intent of the verdict, that he be found guilty of reckless assault and battery?" One by one, each juror responded in the affirmative. The judge then announced, and directed the clerk to record, the two verdicts of guilty of assault and battery on a public employee, on the theory of reckless assault and battery. The judge then discharged the jury.

1. The defendant contends that the judge's manner of resolving the inconsistency between the jury's verdicts and the legal principles on which they had been instructed "invaded the province of the jury and compromised the integrity of the verdicts." We agree.

A jury verdict on a criminal charge must be unanimous, and a judge does not have the authority to accept an ambiguous, tentative, or conditional verdict. To do so, in essence, would be to "direct a verdict when there are issues of fact to be resolved." *Commonwealth* v. *Floyd P.*, 415 Mass. 826, 831 (1993), quoting *Commonwealth* v. *Hebert*, 379 Mass. 752, 755 (1980). The

charged on was intentional assault and battery and reckless assault and battery, and that negligent activity on the part of the defendant would not amount to a guilty on either of those theories on this crime. What did they intend to do?"

jury returned verdicts of "negligent" assault and battery, despite having received clear instructions that no such offense existed in law. The verdict slips (which, when properly used, ordinarily eliminate confusion as to a jury's decision) confirmed that the verdicts indeed bespoke convictions of "negligent" assault and battery.

It cannot be said with conviction whether the jury's choice of wording was deliberate (in which case, as matter of law, the jury did not convict the defendant) or a manifestation of the jury's confusion over the legal import of the terms "negligent" and "reckless." We can fairly conclude, however, that the judge's explicit instructions on the legal standards for a conviction of the offense charged were not followed. The verdicts presented more than a technical defect. They were at best ambiguous and cannot be deemed to pronounce the defendant either guilty or not guilty by unanimous decision. "There is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." *Cook* v. *United States,* 379 F.2d 966, 970 (5th Cir. 1967).

Faced with ambiguity on a matter of ultimate significance, the correct procedure is to decline to record the verdict (or, if the verdict has been recorded, to set it aside), call the jury's attention to their apparent misunderstanding of his instructions, and, after reinstruction, send the jury out for further deliberations. In *Pritchard* v. *Hennessey,* 1 Gray 294, 296 (1854), Justice Metcalf wrote, "The practice of sending out a jury, when they return a finding that is absurd or defective, has existed more than four hundred years." These words recognize a settled rule of procedure, long established as of one and one-half centuries ago, that continues to this day. See *Commonwealth* v. *Brown,* 367 Mass. 24, 28 (1975); *Commonwealth* v. *Green,* 302 Mass. 547, 557 (1939); *Commonwealth* v. *Haskins,* 128 Mass. 60, 61-62 (1880) ("It would have been quite proper, before the record and affirmation of the verdict, for the presiding judge to have called the attention of the jury to their misunderstanding of his previous instructions, and to have explained to them the mode by which it became their duty [to apply correct legal principles] and to have required of them to retire for further deliberation"). See also K.B. Smith, Criminal Practice and Procedure § 1970 (2d ed. 1983 & Supp. 2004).

"We have said that '[t]he only verdict which can be received and regarded, as a complete and valid verdict of a jury, upon which a judgment can be rendered, is an open and public verdict . . . affirmed in open court, as the unanimous act of the jury, and in presence of the whole panel, so that each juror has an opportunity to express his dissent to the court, in case his decision has been mistaken or misrepresented by the foreman or his fellows, or in case he has been forced into acquiescence by improper means." *Commonwealth* v. *Lawson*, 425 Mass. 528, 530 (1997), quoting *Lawrence* v. *Stearns*, 11 Pick. 501, 502 (1831). There are times, of course, when a judge should use the discretion accorded by Mass. R. Crim. P. 27 (d), 378 Mass. 897 (1979), to poll a jury after the verdict is returned and before it is recorded. Even after the verdict is recorded, if a juror indicates a public disagreement with the verdict as announced, the verdict is not unanimous, and the jury should be polled to obtain "a clear sign of each juror's assent to the announced verdict." *Commonwealth* v. *Dias*, 419 Mass. 698, 703 (1995). See *Commonwealth* v. *Reaves*, 434 Mass. 383, 395 & n.17 (2001). When polling is undertaken, however, any questioning of the jurors must strictly be limited to this purpose and may, in no circumstances, "intrude into the deliberative processes of the jury or any juror." *Commonwealth* v. *Spann*, 383 Mass. 142, 151 (1981).

Instead of asking each juror publicly to affirm the verdicts as announced by the foreperson and recorded on the written verdict slips (which would not have been helpful in the circumstances), the judge rephrased the verdicts in accordance with the foreperson's proffered correction. The question posed by the judge — "[W]as that the intent of the verdict, that he be found guilty of reckless assault and battery?" — was not neutral but, in essence, asked each juror to affirm the judge's suggestion that he or she had meant to convict the defendant of an offense other than that which had been plainly announced and written on the verdict slips. The message behind the inquiry strongly suggested that the jury's error had created a difficult situation which the judge wanted fixed forthwith. Rather than allowing the jury to retire in order to clarify their actual intent, the judge's approach asserted a subtle, yet not insubstantial, form of

coercion that urged each juror to commit, by affirmative response in open court, to the judge's assumption as to his or her intent.[3] Cf. *Commonwealth* v. *Roth,* 437 Mass. 777, 786, 789, 792-793 (2002), quoting *A Juvenile* v. *Commonwealth,* 392 Mass. 52, 56 (1984) (holding impermissible practice of taking partial verdicts from deadlocked juries, when single charge is broken down into lesser charges, because it would "constitute an unwarranted and unwise intrusion into the province of the jury"). The failure of the judge to follow established procedures compels our conclusion that the verdicts must be set aside. Any doubt in this regard must be resolved in favor of the defendant. See *Commonwealth* v. *Floyd P.,* 415 Mass. 826, 832 (1993).

2. The infirmity in the jury's verdicts on assault and battery on a public employee renders moot the issue whether the defendant was materially prejudiced by the prosecutor's noncompliance with established rules of discovery. See *Commonwealth* v. *Stote,* 433 Mass. 19, 22 (2000). We are not pleased, however, that the situation occurred at all. The district attorney's office obviously had the reports in its possession for some time and was under a duty to ensure that copies of the reports were provided to the defendant's counsel in a timely manner. A good faith assumption that discovery had been timely provided falls far short of fulfilling this duty and cannot be condoned. See *Commonwealth* v. *Bing Sial Liang,* 434 Mass. 131, 136-137 (2001).

The assistant district attorney who prosecuted the case expressed his surprise to the judge with respect to the existence of the reports. Had he reviewed the case file prior to trial, this unfortunate episode might have been avoided altogether. We realize that prosecutors in the District Court jury sessions have busy caseloads, but the pressure of the work cannot excuse

---

[3]Because we conclude that the judge's questioning was improper coercion that could have affected the integrity of the verdict, we easily distinguish circumstances in this case from those in other decisions, cited by the Appeals Court in its unpublished memorandum, in which judges' colloquies with one or more jurors have been deemed permissible neutral attempts to obtain clarity in a jury's verdict. See, e.g., *Commonwealth* v. *Brown,* 367 Mass. 24, 28 (1975); *Commonwealth* v. *Delehan,* 148 Mass. 254, 255 (1889); *Commonwealth* v. *Diaz,* 19 Mass. App. Ct. 29, 36 (1984); *Commonwealth* v. *Liakos,* 12 Mass. App. Ct. 57, 62-63 (1981).

nonperformance as to mandatory items of discovery that are actually in the case file. We trust that such surprises will not occur in the future.

3. The judgments are reversed, the verdicts set aside, and the case remanded for a new trial.

*So ordered.*